UNITED STATES DISTRICT COURT **FILED**
NORTHERN DISTRICT OF CALIFORNA

2008 MAY 20  A 11: 14

No. C08-01964

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

GENE RUGRODEN )
)
      Plaintiff )   REQUEST FOR
) TEMPORARY
   vs. ) RESTRAINING
) ORDER
STATE BANK of PARK RAPIDS, )
JACK SMYTHE, JON SMYTHE, )
CITY OF PARK RAPIDS, MN, )
NORTHBEACH ASSOCIATION )
Et al., CHUCK HAGEN )
DOES 1 thru 100 )
)
     Defendants. )
)

    Plaintiff hereby requests a restraining order to prevent the immediate and irreparable loss and damage will result before the adverse party can be heard in opposition.

In the above noted case, Plaintiff does not know exactly how his property has been taken or exactly how the authority to take further property action advanced. The Plaintiff

In this case believes discovery will show a conspiracy to maliciously deprive Plaintiff's right to due process and his property.

Plaintiff has attempted to resolve a debt owed to State Bank of Park Rapids et al. for several years including contracting to sell one piece of property for more than twice the amount claimed by State Bank. The proceeds would more than have covered the debt. State Bank scared off the purchaser and demanded Plaintiff turn over a different piece of property to settle debt.

State Bank has set 22May08 for a sheriff's sale of all of Plaintiff's Hubbard County

1

Property. If Plaintiff's property goes to sale, several other improper liens will be operational. Plaintiff does not know exactly how these additional liens advanced on to the properties. Plaintiff further believes the discovery process will illuminate how they came about. Plaintiff believes the liens are a direct result of the activity described in his complaint. Plaintiff knows that federal district courts do not have jurisdiction to review state court rulings, however in this case once Plaintiff knows how due process was denied, he may then go to state court in Minnesota and request any actions or rulings be vacated. Until discovery, Plaintiff will not know exactly the depth and breadth of what exists or why. Plaintiff is not asking the Court to determine the validity of any state court orders with this request, but to stay the 22MAY08 sheriff's sale until the above case can be heard. In the county where the Plaintiff's property is, an article in the newspaper came out indicated the formerly presiding Judge had improperly hand picked his court deputies and told the sheriff what to pay them. Plaintiff believes these same deputies committed acts detrimental to Plaintiff's due process and caused Plaintiff cause for concern for his own safety in the county.

To delay the Sheriff's Sale would not be any hardship on State Bank except for interest on any valid claim for money. The sale would very probably do serious damage to the Plaintiff's property that may not be recovered when the above action is adjudicated by mechanisms unknown to Plaintiff at this time.

These acts and others raise the likelihood of serious questions going to the merits and the balance of hardships. The above referenced Case pleading is attached by reference.

With this request is proof of service to State Bank's attorney, Peter M. Rehon, Ten Almaden Boulevard, Suite 550, San Jose, CA 95113 (408-434-0900) today by fax

2

And mail. The sheriff's sale is scheduled for 22MAY08.

**RELIEF SOUGHT:**

1) Allow some latitude in pleadings for Plaintiff's pro se position.

2) To Stay Hubbard County Sheriff sale of Plaintiff's real and personal property in Hubbard County until the above referenced case is heard.

Respectfully submitted.

Dated:   20MAY08

Gene Rugroden
1157 Tilton Dr.
Sunyvale, California
Telephone:   408.781.0071
Facsimile:   408.736.2929

I confirm that I have prepared this motion and believe the above to be true to the best of my knowledge.

Dated:   20MAY08                                    Gene Rugroden

JS 44 (Rev. 12/07) (cand rev 3-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
GENE RUGRODEN

## DEFENDANTS
State Bank of Park Rapids, MN, Jack Smythe, Jon Smythe, City of Park Rapids, Northbeach Association, Chuck Hagen

(b) County of Residence of First Listed Plaintiff: Santa Clara, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Hubbard, MN
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Gene Rugroden

Attorneys (If Known)

C08 01964 JF

ADR
E-FILING
RS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [X] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reapportionment |
| 120 Marine | 310 Airplane | 362 Personal Injury— Med. Malpractice | 620 Other Food & Drug | 423 Withdrawal 28 USC 157 | 410 Antitrust |
| 130 Miller Act | 315 Airplane Product Liability | 365 Personal Injury — Product Liability | 625 Drug Related Seizure of Property 21 USC 881 | | 430 Banks and Banking |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | 368 Asbestos Personal Injury Product Liability | 630 Liquor Laws | PROPERTY RIGHTS | 450 Commerce |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | PERSONAL PROPERTY | 640 R.R. & Truck | 820 Copyrights | 460 Deportation |
| 151 Medicare Act | 340 Marine | 370 Other Fraud | 650 Airline Regs. | 830 Patent | [X] 470 Racketeer Influenced and Corrupt Organizations |
| 152 Recovery of Defaulted Student Loans (Excl. Veterans) | 345 Marine Product Liability | 371 Truth in Lending | 660 Occupational Safety/Health | 840 Trademark | 480 Consumer Credit |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 380 Other Personal Property Damage | 690 Other | | 490 Cable/Sat TV |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 385 Property Damage Product Liability | LABOR | SOCIAL SECURITY | 810 Selective Service |
| 190 Other Contract | 360 Other Personal Injury | | 710 Fair Labor Standards Act | 861 HIA (1395ff) | 850 Securities/Commodities/ Exchange |
| 195 Contract Product Liability | | | 720 Labor/Mgmt. Relations | 862 Black Lung (923) | 875 Customer Challenge 12 USC 3410 |
| 196 Franchise | | PRISONER PETITIONS | 730 Labor/Mgmt.Reporting & Disclosure Act | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS | 510 Motions to Vacate Sentence | 740 Railway Labor Act | 864 SSID Title XVI | 891 Agricultural Acts |
| 210 Land Condemnation | 441 Voting | Habeas Corpus: | 790 Other Labor Litigation | 865 RSI (405(g)) | 892 Economic Stabilization Act |
| 220 Foreclosure | 442 Employment | 530 General | 791 Empl. Ret. Inc. Security Act | | 893 Environmental Matters |
| 230 Rent Lease & Ejectment | 443 Housing/ Accommodations | 535 Death Penalty | | FEDERAL TAX SUITS | 894 Energy Allocation Act |
| 240 Torts to Land | 444 Welfare | 540 Mandamus & Other | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 550 Civil Rights | IMMIGRATION | 871 IRS—Third Party 26 USC 7609 | 900 Appeal of Fee Determination Under Equal Access to Justice |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | 555 Prison Condition | 462 Naturalization Application | | 950 Constitutionality of State Statutes |
| | 440 Other Civil Rights | | 463 Habeas Corpus – Alien Detainee | | |
| | | | 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
TITLE 18 PART I CHPT 96 1962; CHPT 13 241

Brief description of cause:
CONSPIRACT TO DEPRIVE CIVIL RIGHTS AND PROPERTY

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 16,920,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)
[ ] SAN FRANCISCO/OAKLAND    [X] SAN JOSE

DATE: 15APR08
SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**ORIGINAL FILED**
08 APR 15 AM 9: 58

C08 01964 JF

RS

| | |
|---|---|
| GENE RUGRODEN )<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>STATE BANK of PARK RAPIDS, )<br>JACK SMYTHE, JON SMYTHE )<br>CITY OF PARK RAPIDS, MN, )<br>NORTHBEACH ASSOCIATION )<br>et al., CHUCK HAGEN )<br>DOES 1 thru 100 )<br>)<br>Defendants. )<br>) | COMPLAINT FOR<br>CONSPIRACY TO DEPRIVE<br>CIVIL RIGHTS and PROPERTY<br><br>ADR<br><br>E-FILING |

Plaintiff alleges the following based upon the investigation by Plaintiff, which included, among other things, a review of defendants' files and court records, statements by individuals, newspaper articles, correspondence with the entities named above and others.

Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### SUMMARY OF ACTION

1.  This is a federal action against a cast of players that have conspired to defraud Plaintiff Rugroden of his real and personal property, cause Plaintiff extreme mental anguish and hurt livelihood continuously from mid 1999 through the present. **(PERIOD)**

1

2. Plaintiff Rugroden has not been afforded due process in Superior Court situated in Park Rapids, Minnesota due to conspiracy by two or more persons to injure, oppress, threaten and intimidate Plaintiff, witnesses and others.

## JURISDICTION AND VENUE

3. This complaint is for an amount greater than $75,000.00.

4. Plaintiff in this case has continuously resided in Santa Clara County, in the state of California.

5. Defendants reside in Hubbard County, in the state of Minnesota.

6. Defendants have used the United States Postal Service and other package services including but not limited to UPS and FedEx in their commission of these offenses on Plaintiff Rugroden in Santa Clara County, California.

7. Due to Plaintiff Rugroden's concern for his own safety, he believes the Federal Court in his home county of Santa Clara, California should adjudicate this complaint.

## PARTIES

8. Plaintiff Gene Rugroden purchased several Real Estate parcels and vehicles, From Defendants. Gene Rugroden re-started the restaurant business know as "The Pines Supperclub" and was in the process of repairing the Park Rapids MN Armory For Community use.

9. State Bank of Park Rapids, is a state chartered community bank situated in Hubbard County, state of Minnesota. State Bank of Park Rapids sold the Pines Supper Club property and a 1995 vehicle to Gene Rugroden in 1999 and 2000.

10. Jack Smythe and Jon Smythe were officers and shareholders of State Bank of Park Rapids.

11. City of Park Rapids is situated in Hubbard County, State of Minnesota. The City Of Park Rapids sold the Park Rapids Armory to Plaintiff Gene Rugroden in 1999. The City of Park Rapids converted all of Plaintiff Rugroden's property in a city owned aircraft hanger to its own use.

12. Northbeach Association is situated on Potato Lake in Hubbard County next to The Pines Supperclub property.

## SUBSTANTIVE ALLEGATIONS

13. On or about 1JUN99, Plaintiff, Rugroden, agreed with Jack Smythe of State Bank to purchase on a Deed for Contract from State Bank of Park Rapids the property known as "The Pines Supperclub" on about eleven acres situated on approximately five hundred lakefront feet on Potato lake, Minnesota that State Bank had foreclosed on.

14. On or about 15JUN99, Jack Smythe turned possession of the Pines property over to Plaintiff, Rugroden.

15. On or about 15JUN99, Park Rapids attorney James Wallace reviewed the Pines property abstract and property description and agreed that it matched that property description State Bank had foreclosed on and owned.

16. On or about 1JUL99, Plaintiff Rugroden, secured a building permit to add on to The Pines Supperclub restaurant and living space above about two thousand square feet and a 15 foot by 30 foot walk in refrigerator and freezer.

17. Between 1JUL99 and 30DEC99 Plaintiff Rugroden completed the addition and performed the necessary repairs and upgrades to allow the Pines Supperclub to re-open 31DEC99.

3

17. On or about 26DEC99, Jack Smythe posted overnight to California the Contract for Deed for Plaintiff Rugroden to sign, notarize and send back over night to Jack Smythe of State Bank of Park Rapids. Jack Smythe insisted that this was urgent, as he wanted to close the deal before the end of the year.

19. When received on or about 28DEC99, Plaintiff Rugroden did sign, notarize and Posted overnight the above mentioned Contract for Deed on the Pines property.

20. By the end of 2000 Plaintiff Rugroden learned that the Contract for Deed Property description on the Pines property had been switched. When Plaintiff Rugroden queried Jack Smyth about the switch; his reply was that attorney Greg Larson made the changes to "make things go more smoothly." Greg Larson was also, at the time, the County Attorney for Hubbard County.

21. When the Contract for Deed for the Pines property was to be renewed on or about the end of 2002, Jack Smythe insisted that Plaintiff Rugroden sign a new Contract for Deed with the switched property description.

22. When Plaintiff Rugroden insisted that the property description conform to that Which Attorney James Wallace had reviewed and that State Bank defend the property bundle of rights, Defendant State Bank stopped taking automatic loan payments from Plaintiff Rugroden's State Bank checking account and took possession and control of The Pines Supper Club property.

23. Chuck Hagen, et al caused the water pressure to the pines property to drop below Ten pounds per square inch in the restaurant Friday and Saturday nights. Chuck Hagen controlled the water line for Northbeach et al.

24. When Plaintiff Rugroden tried to connect the restaurant to a well on the Pines

4

Supperclub property known as the "BLUFF WELL" Superior Court Judge Jay Mondry Forbid Plaintiff Rugroden from using "the bluff well", enforced by Hubbard county deputies.

25. Plaintiff then contracted to drill another well. (TENNIS COURT WELL) on the Pines Supperclub property.

26. Judge Mondry forbid Plaintiff Rugroden from running plumbing on the pines property from the tennis court well to the Pines Supper Club building, enforced by Hubbard county deputies.

27. A community pumping station to leach fields on the pines property pumps sewage from the Pines Supper Club.

28. The sewage pumping station is under the control of Chuck Hagen et al and was not maintained properly spilling sewage near Potato Lake. This system supports Northbeach Association and Chuck Hagen's home.

29. Judge Mondry ordered the sewer line from the Pines Supperclub be disconnected. The Pines Supperclub and the leach field preceded Northbeach and Chuck Hagens operation.

30. Hubbard County Sheriff deputies and others harassed, intimidated and interfered with Plaintiff Rugroden's business and property and caused Plaintiff Rugroden extreme mental anguish.

31. Plaintiff Rugroden sent to Hubberd County Sheriff, Gary Mills several letters suggesting public corruption and other acts against Plaintiff Rugroden's property, and safety. Hubbard County Sheriff, Gary Mills replied that the complaints were civil in nature and would not take any further action.

32. In 2000 and 2001 Plaintiff purchased condo units 14 and 15 in Northbeach.

33. In 2001 Chuck Hagen et al. tore most of the roofs and the siding and decks off Plaintiff's units 14 and 16 in Northbeach.

34. Plaintiff Rugroden hired a contractor to re-roof units 14 and 16. A Hubbard County Sheriff deputy and investigator told the contractor that he would not be allowed to work on the roofs on Judge Mondry's orders.

35. Due to the disrepair of units 14 and 16, the elements ruined all the interior sheet rock and furnishings. A tenant had to move out of unit 14 due to the damage.

36. Due to Plaintiff Rugroden's concern for the safety of all concerned he has not Been able to set foot in Hubbard County since 2004.

## LOSS CAUSATION

37. Plaintiff Rugroden learned in 2007 Judge Mondry had court bailiffs under his control by demanding which deputies were to be assigned to the court, and setting the deputies salaries.

38. Hubbard County deputies intruded into a rental home owned by Plaintiff Rugroden on Lake Belletaine in Hubbard County claiming to be looking for Plaintiff Rugroden scaring the renters off in 2003. The property not to be rented since.

39. In 2003 a Hubbard county deputy requested citizens to alert him when Plaintiff was is town because Plaintiff Rugroden was going to be arrested.

40. Plaintiff Rugroden was pulled over by an self described out of county police Officer after midnight and conveyed the message that Plaintiff was not welcome and Plaintiff's safety was at jeopardy.

41. Judge Mondry refused to allow Plaintiff Rugroden to appear telephonically

6

in his Court.

41. In March of 2008 Judge Rassmussen has not approved Plaintiff Rugroden to Appear telephonically in a hearing.

42. With Plaintiff Rugroden unable to appear, lack of proper service and concern for his safety, Defendants agreed to deprive Plaintiff Rugroden of his property and businesses.

43. City of Park Rapids, Minnesota confiscated the contents of Plaintiff Rugroden's Hangar included, a 1996 Chevy truck, Aero floats, constructions equipment and tools etc. and refused to provide any information or accounting of the confiscation. Value: greater that $48.000.00. Giving him nothing.

44. City of Park Rapids took back the Park Rapids Armory after Plaintiff Rugroden Spent over $160,000.00 on repairs giving Plaintiff Rugroden nothing.

45. Northbeach association took over condo units 14 and 16 giving Plainteff Rugroden nothing.

46. State Bank of Park Rapids took back the Pines Property, also taking Personal property, giving Plainteff Rugroden nothing. State Bank did not personally Serve any Cancellation of Contract for Deed notice as required. Tarpy v. Nowicki, 286 Minn. 257,175 N.W. 2d 443 (1970); Minn. Stat. 559.21

### FIRST CLAIM

47. Plaintiff repeats and realleges each and every allegation contained above as if Fully set forth herein.

48. During the PERIOD Defendants carried out a plan, scheme and course of

7

conduct which was intended to and, throughout the PERIOD, did:

    a. relieve Plaintiff Rugroden of over $935,000.00 in property, rents and investments.

    b. cause Plaintiff Rugroden severe mental anguish.

49. Each of the Individual Defendants' primary liability and controlling person liability, arises from the following facts: (i) The individual defendants were high-level executives and/or directors at the entities during the PERIOD and members of the management teams or had control thereof; (ii) each of these defendant personnel enjoyed personal contact and familiarity with other entity personnel; and (iii) each of these defendant personnel knew of the violation of Plaintiff Rugroden's rights.

        **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

Damages:

| | | |
|---|---|---|
| 1. | Investment in the Pines Supperclub property | $260,000.00 |
| 2. | Value of Unit 14 and 16 Condo units. | $200,000.00 |
| 3. | Investment in the Park Rapids Armory | $160,000.00 |
| 4. | Value of Vehicle, tools and floats in hangar | $51,000.00 |
| 5. | Lost rents, Lake Belletaine | $21,000.00 |
| 6. | Mental anguish | $1,000,000.00 |
| 7. | Punitive and exemplary | $15,228,000.00 |
| 8. | For costs of this action; | |
| 9. | For attorney fees; and | |
| 10. | For such other and further relief as the Court deems just and proper. | |

Dated:     AUG08

Gene Rugroden
1157 Tilton Dr.
Sunnyvale, CA 94087
408.781.0071
408.739.2929 fax

## VERIFICATION

I verify I have read the above and agree with it.

Dated:     AUG08                              Gene Rugroden

## Sheriff resumes bailiff oversight

By Frank Zaworski

A regime change at the 9th District Court in Park Rapids has resulted in Hubbard County sheriff Gary Mills resuming full responsibility for court security.

Previously, recently retired judge Jay Mondry preferred to schedule bailiffs himself as well as tell the county how much they should be paid.

Incoming Judge Paul Rasmussen found this practice to be untenable.

In a December 14 letter to Mills, Rasmussen said that by law, the responsibility for court security lies with the county board and the sheriff.

"I do not know how or why the existing arrangement came to be regarding scheduling and compensation for bailiffs in Hubbard County," Rasmussen wrote. "The shifting and blurring of responsibility is problematic, however, and may raise liability issues and may even compromise court security itself."

"My request is simply that the county formally resumes its responsibility for court security and all bailiff matters."

At its meeting last week, the Hubbard County board of commissioners discussed Rasmussen's request with the sheriff.

"I have no problem resuming bailiff training and scheduling," Mills told the commissioners.

"As long as the sheriff's office understands the concern's, there is no reason the sheriff's office shouldn't handle it," said commissioner Dick Devine.

The commissioners agreed to transfer the budgeted funds for bailiffs from the district court budget to the sheriff's budget.

COUNTY...to page 6

**SNOWMOBILERS HAVE BEEN DESPERATE** to get out and ride. These tracks were made when a couple of inches of snow fell last week, but rain washed most of the powder away, leaving only grass and ice, on much of this alternate trail near Nevis. "We in the tourism industry call snow white gold," Park Rapids Lakes Area Chamber of Commerce director Katie Magozzi said. "We are looking at strategic planning for how to be a winter destination regardless of the weather. We have a lot going for us." Photo by Lorie Skarpness.

## No snow, no business

By Lorie Skarpness

Many area businesses are longing for the sight of snowmobilers coming up north to stay, play, and spend their money. Instead, those eager to get out on the trails must fly to the mountains of Colorado or Montana to find snow.

On Friday, Dec. 29, a couple of inches of snow fell, clinging to every branch, but that evening's hard and steady rain melted much of the snow and turned many country roads and driveways into glacial-like ponds.

That is hurting area businesses that count on tourists to sustain them during the time between deer hunting and the fishing opener. Snow is "white gold" director Katie Magozzi said, the lack of snow and unseasonably warm weather that affects the quality of ice fishing in the area have had a very significant negative impact on this area.

"We in the tourism industry call snow white gold," she said.

"When the tourists aren't here, it has a negative impact on gas stations, resorts, hotels and bed and breakfasts, grocery stores and restaurants." Winter delightful up north, snow or no snow

NO SNOW...to page 4

---

the rejected sheriff. The board elected Cal. He said the violation contractor occurred Nov. 29, and, along with the contractor...

began the business in 1985. AFTER SELLING a successful business, Paul and Lynn Hunt moved into a trailer on the campus of the new business, which is a research and development company for sustainable living.

added their own twist — when they sold their business at the peak of the American Dream.

When they sold their business at the peak of the American Dream, they bought 6 acres of land near downtown Pine River because they wanted to be within walking distance of downtown. They moved a used trailer house onto the property to live in because they wanted to use their resources to create research and development business for sustainable living called Hunt Utilitie

Rasmussen and are now residing in Pine River on a campus for the research and development of sustainable living.

In the beginning stages of their business, Paul worked on the development of a technology that transmitted data from point A to point B using almost no power. His idea was to transmit data slowly within an ultra narrow bandwidth, which evolved into electrical power meter readers called Turtles. These Turtle transmitters send electrical information back to power substations; and not only read meters for billing purposes, but also collect information on peak power usage lines and track power outages.

Power companies embraced this patented technology and by 1999 Hunt Technologies constructed a $5 million building located near Pequot Lakes and employed over 200 people in the manufacturing of Turtles.

Paul and Lynn's story is truly an American story — a story where ingenuity, hard work and a bit of luck produce success and wealth. Three years ago the Hunts

TURTLES...to page 13

Gary Mills　　　　　　　　　　　　　　　　　　　　　　　　23AUG06
Hubbard County Sheriff
300 Court Street
Park Rapids, MN 56470

Dear Gary,

    I guess it is time to ask for your assistance.

You have knowledge of most of the following. This is memorializing my request to you, and starts my quest for justice.

In the summer of 1999 I purchased from Jack Smythe (State Bank of Park Rapids) the Pines Supperclub property on a contract for deed. State Bank had foreclosed on the property. In June of 1999 Jack gave me possession to construct an addition and prepare for a 31DEC99 grand opening and New Year's Eve party. Jack suggested that the paperwork would follow. I traveled to and from my other business commitments while the construction was in progress. During the last week of 1999 Jack called me urgent to close the sale sending me contracts overnight. He further requested that I sign, Notarize, and overnight the contracts to him. On about July 1999 my attorney and I reviewed the property description of the Pines property the bank had foreclosed on. The contracts, written by Greg Larson (also the County Attorney) contained a, undetected by me, a different property description. In the spring of 2000 Chuck Hagen, Neil Narveson, Omasa Trust, Leading Edge Aviation et. al., filed suit against me and State Bank, claiming many rights to the Pines property. It was at this time that I discovered the switched property description. The change removed an important piece including beachfront. When I queried State Bank, Jack Smyth indicated that the county attorney (Greg Larson) made the change, favoring Chuck Hagen, "to make things go smoothly."

About the same timeframe I purchased two Northbeach condominiums and two, one-week intervals at Northbeach.

At one time, Chuck Hagen owned the Pines property, and the condo property. The water for the restaurant came from a well at the north end of the north condo building. The sewer for the restaurant ran through the condo property to a leach field on the Pines property.

At peak restaurant times in 2000 and 2001, the water pressure dropped to less than 10 psi. At the same time I noted that the water pressure in my condo was over 35 psi, indicating

that somewhere in the condo pool house or thereabout the flow was restricted. The water conditioner was turned off causing rust to come into the restaurant, ruining my commercial dishwasher and new commercial water heater. When I tried to use the well on the Pines property, Judge Mondry forbid me from doing anything with my well. I then contracted to drill a new well near the restaurant. When I started to connect the well to the restaurant, Judge Mondry forbid it with Sheriff's deputies arriving to enforce it. At that time I design a pump system to increase the water pressure and installed a commercial water conditioner.

Shortly after I purchased the condominiums and the week intervals Chuck Hagen tore up the roofs on my condominiums so as to cause the roofs to leak very badly and tore the decks off and much siding. I contracted to have the roofs repaired and re-shingled. On two occasions when the contractor tried to do the work, the sheriff's department responded with orders from Judge Mondry forbidding work on the roofs. A Sheriff's deputy and investigator arrived to enforce. All of the contents and sheetrock was destroyed. The tenant moved out. As a final blow, Judge Mondry cut off the sewer system serving the restaurant.

At least seven Lawyers, three experts, one CPA and a handful of others including witnesses have tried unsuccessfully to resolve problems. When I show the facts to a lawyer, I find no one interested to get involved for the obvious reasons. Witnesses have been run off and/or intimidated.

In Addition, I have had Sheriff deputies intrude into buildings on my property, terrorize renters, running them off, hurting my business and reputation, searching for me in 2003. On 30MAY03 I was ticketed at 2230 on the new bypass south of town. The officer would not give his name or sign the ticket. He crossed out what looks like badge number 2183 and put in number 5339. (Appendix E) He said he was helping out the Park Rapids Police department from Wadina. The contact was very uncomfortable.

On or about October 2005 a friend was visited by a Sheriff deputy and told to notify the deputy if I showed up in town as an arrest warrant was out for me. He further stated that Mr. Volden took my truck and the water tower and other property and aircraft equipment was being taken from me.

A great deal of effort has been expended to keep me out of town. It appears that the Park Rapids police department is also working toward that end. Most of the court proceedings have been either concealed from me or notices have not reached me. In several instances when I found out the day or the day before a scheduled court date, Judge Mondry would not let me appear telephonically and proceeded without me. One time I had traveled to Park Rapids for an appearance, I was sick with the flu. Unable to make the date, called the court for a continuance and was denied.

This month I discovered that the same players and proxies are mounting a coordinated effort to steal more of my property.

As you can expect, loosing one and a quarter million dollars is not something that I will walk away from. This does not include Money Judge Mondry has caused me to give to "experts, Arbitrators and a Receiver" or attorney costs.

As a result of this organized and coordinated effort, I have been stripped of the assets found in Appendix A. Also in Appendix A, the assets at risk. All of this was taken from me with absolutely $0.00 in return.

More importantly, I have not been able to come to Park Rapids to see my son for over two and a half years because of fear for the safety of all concerned and my freedom. I have not seen him at all for over 16 months.

I believe your department is the first place look for justice. If it is not, please advise me. At this time, you and my California attorney are the only recipients receiving this communication.

Please feel free to contact me via phone or e-mail at any time.

Regards,

Gene Rugroden

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|
| GENE RUGRODEN | (408) 781 0071 | |
| ATTORNEY FOR (Name): | | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA<br>STREET ADDRESS: Superior Court<br>MAILING ADDRESS: Civil Division<br>CITY AND ZIP CODE: 191 N. First St<br>BRANCH NAME: San Jose, CA 95113 | | |
| PLAINTIFF/PETITIONER: GENE RUGRODEN | | |
| DEFENDANT/RESPONDENT: STATE BANK OF PARK RAPIDS ET AL | | |
| PROOF OF SERVICE BY MAIL (1013a, 2015.5 C.C.P.) | CASE NUMBER:<br>C08-01964 | |

STATE OF CALIFORNIA         AND    FAX  (408) 494-0909
COUNTY OF   SANTA  CLARA

I am a resident of or employed in the county aforesaid; I am over the age of eighteen and not a party to the within entitled action; my business/residence address is: 1190 DELL AVE UNIT "O"
CAMPBELL CA 95008

On  20 MAY 2008, I served the following documents  REQ FOR TRO

on  STATE BANK of PARK RAPIDS the (plaintiff, defendant, petitioner, respondent or other)

in said action, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at (City and State of mailing)  CAMPBELL CA
addressed as follows:  PETER REHON
TEN ALMADEN BOULEVARD SUITE 550
SAN JOSE CA 95113

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on (date)  20 MAY 08    at (place)  CAMPBELL CA , California.

Signature of server

Rev. 3/1/94    PROOF OF SERVICE BY MAIL    Rose Printing Catalog #511