1  Peter M. Rehon (SBN 100123)
   Mark V. Isola (SBN 154614)
2  REHON & ROBERTS
   A Professional Corporation
3  Ten Almaden Blvd., Suite 550
   San Jose, CA  95113-2238
4  Telephone: (408) 494-0900
   Facsimile: (408) 494-0909
5
   Attorneys for Defendants
6  STATE BANK OF PARK RAPIDS,
   JACK SMYTHE, and JON SMYTHE
7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                  (San Jose Division)

11 GENE RUGRODEN,                      Case No.  C08 - 01964

12           Plaintiff,                **MEMORANDUM OF POINTS AND**
                                       **AUTHORITIES IN SUPPORT OF MOTION**
13      v.                             **TO DISMISS BY DEFENDANTS STATE**
                                       **BANK OF PARK RAPIDS, JACK SMYTHE,**
14 STATE BANK OF PARK RAPIDS ; JACK    **AND JON SMYTHE**
   SMYTHE; JON SMYTHE; CITY OF
15 PARK RAPIDS, MN; NORTH BEACH
   ASSOCIATION, ET AL.; CHUCK              **Date: September 5, 2008**
16 HAGEN, DOES 1 through 100,              **Time: 9:00 a.m.**
                                          **Courtroom: 3**
17          Defendants.
                                       **Honorable Jeremy Fogel**
18

19

20

21

22

23

24

25

26

27

28
                                                    Memo of Law v4.doc

**MEMO. OF POINTS AND AUTHORITIES  ISO MOTION TO DISMISS**
CASE NO. C08 - 01964

1

## TABLE OF CONTENTS

2
Page

3  I.    INTRODUCTION. ...................................................................................................1

4  II.   STATEMENT OF FACTS. .....................................................................................2

5        A.    Background Facts.......................................................................................2

6        B.    Plaintiff's Allegations in his Complaint. ..................................................4

7        C.    Defendants' Lack of Contacts With California.........................................5

8        D.    Plaintiff's Conduct in Both California and Minnesota. ...........................6

9  III.  STATEMENT OF THE ISSUES TO BE DECIDED. ...........................................8

10 IV.   ARGUMENT. .........................................................................................................8

11       A.    Defendants State Bank, Jack Smythe, and Jon Smythe had insufficient contacts
              with the State of California to justify the exercise of personal jurisdiction over
12            them. ..........................................................................................................8

13       B.    The contacts of Defendants State Bank, Jack Smythe, and Jon Smythe with
              California are insufficient, as a matter or law, to establish "general personal
14            jurisdiction."...............................................................................................9

15       C.    Defendants State Bank, Jack Smythe, and Jon Smythe are not subject to "limited
              personal jurisdiction" by the federal district court in California. ..........11
16
              a.    Purposeful Availment through Forum-Related Activities. ........12
17
              b.    Plaintiff's Claims Do Not Arise Out of or Result from Defendants' Forum-
18                  Related Activities ...........................................................................19

19            c.    Exercise of Jurisdiction over Defendants State Bank, Jack Smythe, and Jon
                    Smythe is not reasonable.................................................................20
20
   V.    CONCLUSION.....................................................................................................25
21
22

23

24

25

26

27

28

1

TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Amoco Egypt Oil Co. v. Leonis Navigation Co.,* 1 F. 3d 848, 852 (9th Cir. 1993) .........................23

5

*Ballard v. Savage,* 65 F. 3d 1495, 1500 (9th Cir. 1995)..................................................................20

6

*Bancroft & Masters, Inc. v. Augusta National, Inc.,* 223 F. 3d 1082, 1086 (9th Cir. 2000) ...........10

7

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)..12

8

*Calder v. Jones,* 465 U.S. 783, 79 L. Ed. 2d 804, 104 S. Ct. 1482, (1984) ....................................15

9

*Caruth v. International Psychoanalytical Ass'n,* 59 F. 3d 126, 129 (9th Cir. 1995) ......................24

10

*Coastland Corporation v. North Carolina Wildlife Resources Commission,* 134 N.C. App.
342,346, 517 S.E.2d 661 (Ct. App. N.C. 1999) ..........................................................................22

11

*Congoleum Corp. v. DLW Aktiengesellschaft,* 729 F. 2d 1240 (9th Cir. 1984)................................9

12

*Core-Vent Corp. v. Nobel Industries AB,* 11 F. 3d 1482 1484, 1488 (9th Cir. 1993) ....................21

13

*Cote v. Wadel,* 796 F. 2d 981, 984 (7th Cir. 1986) ..........................................................................12

14

*Cubbage v. Merchant,* 744 F. 2d 665, 667 (9th Cir. 1984)..............................................................10

15

16

*Dallas-Fort Worth Regional Airport Board v. Superior Court,* 63 Cal. App. 3d 482, 133 Cal.
Rptr. 720, 721 (1976) ..................................................................................................................17

17

*Data Disc, Inc. v.Systems Technology Associates, Inc.,* 557 F. 2d 1280, 1287 (9th Cir. 1977)........9

18

*Doe v. Unocal Corp.,* 248 F. 3d 915, 924 (9th Cir. 2001) ...............................................................12

19

*Dole Food Co., Inc. v. Watts,* 303 F. 3d 1104, 1111 (9th Cir. 2002)...............................................12

20

*Fields v. Sedgewick Associated Risks, Ltd.,* 796 F. 2d 299, 302 (9th Cir. 1986)............................23

21

*Floyd J. Harkness Co. v. Amezcua,* 60 Cal. App. 3d 687, 692-93, 131 Cal. Rptr. 667, 670 (1976)
........................................................................................................................................................18

22

*Gray & Co. v. Firstenberg Machinery Co.,* 913 F. 2d 758, 760 (9th Cir. 1990)............................19

23

*Hanson v. Denkla,* 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958) ...........................12

24

*Hill v. Noble Drilling Corp.,* 61 Cal. App. 3d 258, 132 Cal. Rptr. 154, 156 (1976) .....................17

25

26

*Interdyne Co. v. SYS Computer Corp.,* 31 Cal. App. 3d 508, 511-12, 107 Cal. Rptr. 499, 501-02
(1973) .............................................................................................................................................19

27

*International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945) ......9

28

ii

Memo of Law v4.doc

*Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774-75, 79 L.Ed. 2d 790, 104 S. Ct. 1473 (1984) ...................................................................................................................................................13

*Loral Terracom v. Valley National Bank,* 49 F. 3d 555, 561 (9th Cir. 1995)...................................20

*Mattel, Inc. v. MCA Records, Inc.,* 296 F. 3d 894, 899 (9th Cir. 2002)...........................................13

*McGlinchy v. Shell Chemical Co.,* 845 F. 2d 802, 816 n.9 (9th Cir. 1988) ....................................13

*Peacock v. Willis,* 2006 U.S. Dist. LEXIS 96844 (E.D. CA 2006) ..................................................17

*Peterson v. Kennedy,* 771 F. 2d 1244 (9th Cir. 1985)....................................................................9, 18

*Plant Food Co-op v. Wolfkill Feed & Fertilizer Corp.,* 633 F. 2d 155, 158-60 (9th Cir. 1980) .....13

*Rutsky & Co. v. American Special Risk Insurance Services,* 328 F. 3d 1122 (9th Cir. 2003).........15

*Schwarzenegger v. Fred Martin Motor Company,* 374 F. 3d 797, 802 (9th Cir. 2004) ...................11

*Shaffer v. Heitner,* 433 U.S. 186, 204, 53 L. Ed. 683, 97 S. Ct. 2569 (1977) ..................................9

*Shute v. Carnival Cruise Lines,* 897 F. 2d 377, 380 (9th Cir. 1990) .................................................9

*Thos. P. Gonzales Corp. v. Consejo Nacional, Etc.,* 614 F. 2d 1247, 1251 (9th Cir. 1980) .............9

*Tiara Computer Systems, Inc. v. Federal Systems Group, Inc.,* 1992 U.S. Dist. LEXIS 20562 (N. Dist. CA 1992) ..................................................................................................................................9

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980) ................................................................................................................................................12

**Statutes**

Code of Civil Procedure § 410.10.......................................................................................................9

**Rules**

Federal Rules of Civil Procedure, Rule 9 .........................................................................................15

Federal Rules of Civil Procedure, Rule 12(b)(2) ........................................................................1, 27

**MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS**
CASE NO. C08 - 01964

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION.

Defendants State Bank of Park Rapids ("State Bank"), Jack Smythe, and Jon Smythe submit this Memorandum of Points and Authorities in Support of their Motion to Dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  The basic facts that mandate dismissal of the Complaint against Defendants State Bank, Jack Smythe, and Jon Smythe are:

- Defendants Jack Smythe and Jon Smythe are residents of Minnesota and State Bank is a Minnesota corporation;

- Defendants State Bank, Jack Smythe, and Jon Smythe have never been residents of California or done business in California;

- The claims against these defendants involve a change in the legal description of Minnesota real estate in a Contract for Deed, which was negotiated and performed in Minnesota;

- The claims against these defendants arise out of these defendants' conduct in Minnesota.

- The only contacts Defendants State Bank and Jack Smythe had with California are that the Contract for Deed was sent to Plaintiff Gene Rugroden ("Plaintiff") in California for signing in December 1999; and when Plaintiff had insufficient funds in his checking account in Minnesota from which the automatic payments were to be taken, State Bank served the Notice of Cancellation of Contract for Deed on Plaintiff, pursuant to Minnesota law, by mailing and faxing the notice to Plaintiff in California.

- Defendant Jon Smythe had absolutely no contacts with California relevant to Plaintiff's claims.

Therefore, because these moving Defendants have not had sufficient contacts with California, this Court cannot exercise jurisdiction over them, and they must be dismissed.

\\\

\\\

\\\

1

**MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS**
CASE NO. C08 - 01964

Memo of Law v4.doc

## II.    STATEMENT OF FACTS.

### A.    Background Facts.

In the spring of 1999, Plaintiff heard from Sue Smythe, an employee of State Bank who he was dating in Minnesota, that State Bank had foreclosed on the Pines Supper Club property (the "Property"), in Hubbard County, Minnesota, and State Bank was trying to sell the Property. Sue Smythe Aff. On or about June 1, 1999, Plaintiff approached Jack Smythe, as President of State Bank, in Minnesota, and told Jack Smythe that he wanted to buy the Property. Jack Smythe Aff. At a face-to-face meeting at State Bank in Minnesota, Jack Smythe told Plaintiff the price State Bank had to have for the Property. Jack Smythe Aff. On September 15, 1999, Plaintiff and Jack Smythe, as President of State Bank, both signed an agreement in Minnesota, agreeing to the terms of the sale of the Property, as evidenced by Exhibit L. Jack Smythe Aff.; Exhibit L. Although the basic terms of the sale were agreed to in Exhibit L, Plaintiff did not sign the Contract for Deed until December 24, 1999. Contract for Deed, Exhibit B. State Bank would not allow Plaintiff to open The Pines Supper Club for business on New Year's Eve, December 31, 1999, without first signing the Contract for Deed, as Jack Smythe was concerned about the possibility of liquor liability and premises liability when The Pines Supper Club was open for business. Jack Smythe Aff. As such, in December 1999, State Bank sent the Contract for Deed to Plaintiff in California for signing and returning before The Pines Supper Club's opening date of December 31, 1999. Jack Smythe Aff.

The legal description of the Property in the Contract for Deed was consistent with the legal description in the Sheriff's Certificate of Sale regarding the Property, except that the legal description in the Contract for Deed did not include a strip of land on the north side of the adjacent Administration Building Parcel where the North Beach condominium office was located. Gregory D. Larson Aff. The predecessor in interest to the Property, Nordica Food Service, Inc. ("Nordica"), acknowledged that it did not own the strip of land where the condo office was located. Nordica had relinquished any claim it had to the strip of land where the condo office was located to the adjacent property owner, because of a valid claim of adverse possession.

Memo of Law v4.doc

**MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS**
CASE NO. C08 - 01964

Gregory D. Larson Aff.  State Bank could not transfer any more interest in the Property than its predecessor in interest had, so the strip of land where the condo office was located was excepted from the legal description of the Property in the Contract for Deed.  Gregory D. Larson Aff.  To deed the strip of land where the condo office was located in the Contract for Deed would have exposed State Bank and Plaintiff to legal action by the adjacent property owner.  Gregory D. Larson Aff.

There were no representations made by Jack Smythe, or anyone from State Bank, that State Bank was selling to Plaintiff the strip of land where the North Beach Association condo office was located, which land was on the north side of what is referred to as the "Administration Building Parcel," which was adjacent to The Pines Supper Club.  Jack Smythe Aff.  Plaintiff made no representations to Jack Smythe that he intended to purchase the strip of land where the condo office was located.  Jack Smythe Aff.

In late 2000, when Plaintiff was having several disputes with North Beach Association and Chuck Hagen in regard to his use of the Property and two North Beach condominium units that Plaintiff claimed an interest in, Plaintiff disputed the location of the boundary lines between the Property and the adjacent parcels.  Plaintiff claimed that the Contract for Deed regarding the Property with State Bank should have included the strip of land where the condo office was located.  Gregory D. Larson Aff.  Plaintiff had signed the Contract for Deed regarding the Property, which did not include the legal description of the strip of land where the condo office was located.  Contract for Deed, Exhibit B.  Before he signed the Contract for Deed in December 1999, Plaintiff had his attorney, James Wallace, give him a title opinion regarding the Property, which put Plaintiff on "inquiry notice as to any interest claimed by North Beach Association…." Jack Smythe Aff.; Exhibit M.  In signing the Contract for Deed, Plaintiff waived any claims regarding the legal description of the Property.  Plaintiff held himself out as an attorney or as having law school training, and he had the responsibility to read and object to the legal description in the Contract for Deed before he signed it.  Jack Smythe Aff.; Sue Smythe Aff.

The disputes regarding the boundary lines for the Pines Supper Club were the subject matter of Case No. C7-00-705 in Hubbard County, Minnesota, entitled *North Beach Association;*

1  *North Beach Condominium First Section Association; Leading Edge Aviation, Inc.; and Omassa*

2  *Trust, Inc. v. Gene Rugroden and State Bank.*  (A true and complete copy of the Second Amended

3  Complaint in that case is marked as Exhibit E and attached to Defendants' Request for Judicial

4  Notice.)

5        Regardless of the dispute regarding the legal description of The Pines Supper Club in the

6  Contract for Deed, Plaintiff defaulted on the payments required by the Contract for Deed, when

7  he had insufficient funds in his account at State Bank in Minnesota from which the automatic

8  loan payments could be taken, and when Plaintiff refused to otherwise make the loan payments.

9  Jack Smythe Aff.; Gregory D. Larson Aff.  Plaintiff defaulted on another loan obligation to State

10 Bank at about the same time.  Jack Smythe Aff.  Upon Plaintiff's default, State Bank, pursuant to

11 Minnesota law, cancelled the Contract for Deed regarding the Property.  Jack Smythe Aff.;

12 Gregory D. Larson Aff.; Notice of Cancellation of Contract for Deed, Exhibit D.

13        Subsequent to cancelling the Contract for Deed regarding the Property with Plaintiff, State

14 Bank settled the boundary line disputes regarding the Property with the adjacent property owners.

15 Jack Smythe Aff.; Settlement Agreement in Case No. C7-00-705, Exhibit F.

16        **B.    Plaintiff's Allegations in his Complaint.**

17        In his "Complaint for Conspiracy to Deprive Civil Rights and Property", Plaintiff alleges

18 that Defendants State Bank, Jack Smythe, and Jon Smythe have "conspired to defraud Plaintiff

19 Rugroden of his real and personal property…."  Complaint ¶1.  Plaintiff further alleges that State

20 Bank sold the Property to him by Contract for Deed, and State Bank "switched" the legal

21 description of the Property in the Contract for Deed.  *Id.* ¶¶ 9, 20.  Plaintiff alleges that when

22 State Bank requested Plaintiff to sign an Amended Contract for Deed in 2002, and Plaintiff

23 refused to do so unless the legal description of the Property was changed, State Bank "stopped

24 taking automatic loan payments from Plaintiff Rugroden's State Bank checking account and took

25 possession and control of The Pines Supper Club property," …. "also taking personal property,

26 giving Plaintiff nothing."  *Id.* ¶¶ 22, 46.  Plaintiff further alleges "State Bank did not personally

27 serve any Cancellation of Contract for Deed notice as required."  *Id.* ¶ 46.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## C.    Defendants' Lack of Contacts With California.

At no time did State Bank advertise, invite bids, or solicit buyers for the Property in California.  Jack Smythe Aff.

At the time of this sale of the Property to Plaintiff, Plaintiff was a resident of California, but he was an accomplished pilot, and Plaintiff regularly flew in and out of Hubbard County, Minnesota.  Sue Smythe Aff.; Jack Smythe Aff.  When he came to Minnesota, Plaintiff stayed at one of the residences on the real properties he owned in Hubbard County, Minnesota.  Jack Smythe Aff.; Sue Smythe Aff.

In approximately the year 2000 Jon Smythe sold Plaintiff a vehicle while Plaintiff was in Minnesota.  This vehicle was owned by Jon Smythe personally, not State Bank.  Jon Smythe Aff. Jon Smythe has never transacted any business in California, and he had no contacts with Plaintiff in California regarding the sale of the subject vehicle or the subject matter of this litigation.  Jon Smythe Aff.  There are no allegations in the Complaint of wrongful conduct by Jon Smythe in regard to the sale of this vehicle or The Pines Supper Club.

The only contacts of Defendant State Bank with California relevant to the issues in the above-entitled matter are the following:  (a) State Bank sent the original Contract for Deed, the terms of which had been previously agreed to in Minnesota on September 15, 1999, from Minnesota to Plaintiff in California in December 1999 for signing by Plaintiff and returning to Minnesota.  Jack Smythe Aff.; (b) Jeremy M. Monroe, as Senior Vice President of State Bank, sent a letter by facsimile to Plaintiff in California on September 29, 2000, regarding the *North Beach* case, Case No. C7-00-705, and the legal description in the Contract for Deed.  Gregory D. Larson Aff., Exhibit D.; (c) Jack Smythe, as President of State Bank, sent a letter to Plaintiff in California on March 6, 2002, regarding the bank's proposed Amendment to the Contract for Deed, which lowered the interest rate and payment amounts and extended the maturity date.  Jack Smythe Aff., Exhibit N.  That letter refers to Jack Smythe's fax and telephone conversation of March 4, 2002, with Plaintiff regarding the Amendment to the Contract for Deed.  *Id*.  Jack

**MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS**
CASE NO. C08 - 01964

Memo of Law v4.doc

Smythe has no recollection or record of any other telephone calls or correspondence from Jack Smythe to Plaintiff in California. Jack Smythe Aff.

In 2002 Attorney Gregory D. Larson, on behalf of State Bank, faxed and mailed the Notice of Cancellation of Contract for Deed to Plaintiff in California. Gregory D. Larson Aff. and Exhibit D. Gregory D. Larson also had the Notice of Cancellation of Contract for Deed published in The Park Rapids Enterprise (the official newspaper for Park Rapids, Hubbard County, Minnesota) and served on Plaintiff by serving the manager of The Pines Supper Club at the Property in Hubbard County, Minnesota. Gregory D. Larson Aff.; Exhibit D.

Defendants State Bank, Jack Smythe, and Jon Smythe have never had an office, personnel, or business agents in California. Jack Smythe Aff.; Jon Smythe Aff. Defendants State Bank, Jack Smythe, and Jon Smythe have never been registered to do business in California; they have never performed banking services or other business in California; and they have never paid taxes in California. *Id.* The irrefutable evidence shows that the contacts with California by Defendants State Bank and Jack Smythe are limited to letters and legal notices sent by mail or facsimile to Plaintiff in California and a telephone call by Jack Smythe to Plaintiff.

**D.    Plaintiff's Conduct in Both California and Minnesota.**

Plaintiff filed a Request for Temporary Restraining Order in the above-entitle matter to stay the "Hubbard County Sheriff's Sale of Plaintiff's real and personal property in Hubbard County" on April 24, 2008. State Bank has three judgments in Hubbard County, Minnesota, against Plaintiff, totalling approximately $154,415. Hubbard County Judgments against Plaintiff, Exhibit H. The Sheriff's Sale was scheduled to execute on two of those judgment liens against Plaintiff. The Sheriff's Sale previously scheduled for April 24, 2008, had to be rescheduled to May 22, 2008, when State Bank learned that the federal government has a federal tax lien against Plaintiff in the amount of $425,000. Since the federal government had to be given notice of the Sheriff's Sale, the date of the sale was changed to allow for proper notice time. Jack Smythe Aff.; Jerry Janz Aff.

Memo of Law v4.doc

**MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS**
CASE NO. C08 - 01964

Plaintiff's apparent purposes in filing the above-entitled action are to delay the Sheriff's Sale of his real property in Hubbard County, Minnesota, and to harass State Bank, Jack Smythe, and Jon Smythe. Plaintiff told Sue Smythe, who is the Executive Vice President of State Bank, "Before I'm done with State Bank, it will cost the Bank hundreds of thousands of dollars" in attorneys' fees. Sue Smythe Aff. On at least two prior occasions when State Bank has attempted to execute on its judgment liens against Plaintiff, Plaintiff has filed bankruptcy in California to stay the Sheriff's Sales. Jack Smythe Aff. Defendants request this Court to take judicial notice of Plaintiff's three bankruptcy filings in the Northern District of California, which have all been dismissed due to Plaintiff's failure to comply. Orders of Dismissal in Case Nos. 07-5-1001, 07-5-0204, 07-52565, Exhibit I. This indicates that Plaintiff's purpose in filing those bankruptcies was to delay the Sheriff's Sales of the Property in Hubbard County, and that is his purpose in filing the present case.

Plaintiff alleges in paragraph 36 of his Complaint that "[d]ue to Plaintiff Rugroden's concern for the safety of all concerned he has not been able to set foot in Hubbard County since 2004." Plaintiff was present in Hubbard County from April 17 to April 20, 2008. Jack Smythe Aff.; Sue Smythe Aff. There is no evidence that Plaintiff is in any physical danger in Hubbard County. To the contrary, it is Plaintiff who has a reputation for threatening people in Hubbard County, as evidenced by the letter of Neal Narveson, the manager of the North Beach Association, to Jack Smythe dated September 13, 2002, in which Neal Narveson states that Plaintiff told him "about all of the money he [Plaintiff] has, about his status as an attorney who loves a good legal fight, and the fact that he travels the world and is sometimes charged with the business duty of 'killing people.'" Jack Smythe Aff.; Letter from Neal Narveson to Jack Smythe dated September 13, 2000, Exhibit J. Plaintiff tells people that he is an "attorney" or that he has attended law school. Jack Smythe Aff.; Sue Smythe Aff.; Letter from Neal Narveson, Exhibit J. Plaintiff has demonstrated knowledge of how to attempt to manipulate and ignore the rules of the legal system by, among other things, filing three improper bankruptcies in the Northern District of California, all of which were dismissed prior to confirmation due to Plaintiff's failure to comply with the rules, and making misrepresentations to the Hubbard County Court. Bankruptcy

7

Memo of Law v4.doc

Court Orders, Exhibit I; Order and Memorandum in Hubbard County Court File No. C7-00-705, Exhibit K.

Plaintiff has an alternative forum available to him either in the Hubbard County District Court in Minnesota or the federal district court in Minnesota. Plaintiff has five judgments against him at this time in Hubbard County. (See Defendants' Request for Judicial Notice, to which the Judgments are attached and marked at Exhibit H.) In regard to his allegations, in paragraph 37 and both paragraphs numbered 41, of the Complaint about the Hubbard County District Court judges, Judge Mondry has retired. Attached as Exhibit K are true copies of an Order and Memorandum by Judge Mondry against Plaintiff in the *North Beach* case, Court File No. C7-00-705, in which Judge Mondry outlines Plaintiff's failure to appear for court hearings in the *North Beach* case and other related litigation, Plaintiff's misrepresentations to the Court, his lack of cooperation and failure to make required payments, and his failure to present evidence supporting his allegations. Judge Paul Rasmussen, Judge of the Hubbard County Court, rightfully ordered judgment in favor of State Bank and against Plaintiff on March 26, 2008, in Court File No. 29-C1-04-580, entitled *Patrick J. Thomas Agency et al. v. State Bank and Gene Rugroden and State Bank v. Gene Rugroden,* when Plaintiff failed to show up for a hearing on cross-motions, which Plaintiff had scheduled, and Plaintiff failed to call the Court Administrator's office before the hearing to request leave to appear by telephone. Affidavit of Jerry Janz.

### III.   STATEMENT OF THE ISSUES TO BE DECIDED.

**Whether the United States District Court for the Northern District of California has personal jurisdiction over Defendants State Bank, Jack Smythe, and Jon Smythe in regard to the above-entitled action.**

### IV.   ARGUMENT.

**A.     Defendants State Bank, Jack Smythe, and Jon Smythe had insufficient contacts with the State of California to justify the exercise of personal jurisdiction over them.**

Whether there is a basis for the exercise of personal jurisdiction over a defendant in a case depends upon two considerations: (1) whether a state statute potentially confers personal

8

Memo of Law v4.doc

1    jurisdiction over the nonresident defendant, and (2) whether the exercise of jurisdiction accords

2    with federal constitutional principles of due process. *Congoleum Corp. v. DLW*

3    *Aktiengesellschaft,* 729 F. 2d 1240 (9th Cir. 1984), citing *Data Disc, Inc. v.Systems Technology*

4    *Associates, Inc.,* 557 F. 2d 1280, 1287 (9th Cir. 1977).  California's long-arm statute, Cal. Civ.

5    Proc. Code §410.10, authorizes the exercise of personal jurisdiction to the full extent permitted by

6    the Constitution of the United States. *Congoleum Corp.,* 729 F. 2d at 1241.  Therefore, state and

7    federal limitations on the exercise of personal jurisdiction are in accord. *Tiara Computer*

8    *Systems, Inc. v. Federal Systems Group, Inc.,* 1992 U.S. Dist. LEXIS 20562 (N. Dist. CA 1992).

9        The current law of personal jurisdiction is founded on the following principle:

10
11       Due process requires only that in order to subject a defendant to a judgment in
         personam, if he not be present within the territory of the forum, he have certain
         minimum contacts with it such that the maintenance of the suit does not offend
12       traditional notions of fair play and substantial justice.

13   *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945).

14   "Whether a party's contacts are sufficient to permit the state to compel it to defend itself in the

15   state's courts depends upon the facts of each case." *Thos. P. Gonzales Corp. v. Consejo*

16   *Nacional, Etc.,* 614 F. 2d 1247, 1251 (9th Cir. 1980).  "The central concern of the jurisdictional

17   inquiry is the relationship between the defendant, the forum, and the litigation." *Congoleum,* 729

18   F. 2d at 1241, citing *Shaffer v. Heitner,* 433 U.S. 186, 204, 53 L. Ed. 683, 97 S. Ct. 2569 (1977).

19       Courts may exercise either "general jurisdiction" or "limited jurisdiction" (also known as

20   "specific jurisdiction") over nonresident defendants.   "General jurisdiction" exists where the

21   nonresident defendant has "substantial" or "continuous and systematic" contacts with the forum

22   state, regardless of whether the contacts are related to the cause of action. *Shute v. Carnival*

23   *Cruise Lines,* 897 F. 2d 377, 380 (9th Cir. 1990).

24       B.    **The contacts of Defendants State Bank, Jack Smythe, and Jon Smythe with
             California are insufficient, as a matter or law, to establish "general personal
25           jurisdiction."**

26       Where a defendant has "substantial" or "continuous and systematic" contacts with the

27   forum state, there is a sufficient relationship between the defendant and the forum state to support

28   "general personal jurisdiction," even if the cause of action is unrelated to the defendant's forum

9

1  activities. *Peterson v. Kennedy,* 771 F. 2d 1244 (9th Cir. 1985). "The level of contact with the

2  forum state necessary to establish general jurisdiction is quite high." *Shute,* 897 F. 2d at 380.

3  The standard of establishing "general personal jurisdiction" requires that the defendant's contacts

4  with the forum state be of the sort that "approximate physical presence." *Bancroft & Masters,*

5  *Inc. v. Augusta National, Inc.,* 223 F. 3d 1082, 1086 (9th Cir. 2000). When a defendant moves to

6  dismiss for lack of personal jurisdiction, the plaintiff carries the burden of demonstrating that

7  personal jurisdiction exists. *Cubbage v. Merchant,* 744 F. 2d 665, 667 (9th Cir. 1984).

8      The contacts of Defendants State Bank, Jack Smythe, and Jon Smythe with California, as

9  a matter of law, are insufficient to establish "general personal jurisdiction." Defendants State

10  Bank, Jack Smythe, and Jon Smythe have never had a California office, and they have never had

11  personnel or agents doing business in California for them. These defendants have never been

12  registered to do business in California, they have never done business in California, and they have

13  never paid taxes in California. *See, Shute,* 897 F. 2d at 380. The irrefutable evidence suggests

14  the contacts with California by Defendants State Bank and Jack Smythe are limited to letters and

15  legal notices sent by mail or facsimile from Minnesota to Plaintiff in California and a telephone

16  call by Jack Smythe in Minnesota to Plaintiff in California. Some of those letters and notices,

17  which were sent by Gregory D. Larson, the attorney for State Bank, were also mailed to

18  Plaintiff's post office box in Minnesota, personally served on the manager of The Pines Supper

19  Club at The Pines Supper Club in Minnesota, or published in the newspaper in Minnesota.

20      The exercise of "general personal jurisdiction" over these defendants based on the

21  contacts described above would offend traditional notions of fair play and substantial justice.

22  *Tiara Computer Systems,* 1992 U.S. Dist. LEXIS at 20563, citing *International Shoe,* 326 U.S. at

23  316. The United States District Court for the Northern District of California held, in the *Tiara*

24  *Computer Systems* case, that when the defendant's contacts with California are:

25          limited to phone calls, shipments and support to federal installations in California,
        and one related visit to California, … the exercise of personal jurisdiction over

26          Defendant would offend the principles set forth by the Supreme Court in its
        *International Shoe* opinion, and its progeny.

27

28  *Id.* at 20563.

Memo of Law v4.doc

**MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS**
CASE NO. C08 - 01964

1    Defendants State Bank, Jack Smythe, and Jon Smythe have never visited California to

2    deal with Plaintiff, and they have never delivered products or services to California.  The limited

3    amount of letters and notices and one phone call by Defendants State Bank and Jack Smythe to

4    Plaintiff in California were clearly not "substantial" or "continuous and systematic," and thus, are

5    insufficient to establish "general personal jurisdiction" over Defendants State Bank and Jack

6    Smythe.  In addition, Jon Smythe's total lack of any contacts with California establishes that there

7    should be no "general personal jurisdiction" over him by this federal district court in California.

8    **C.    Defendants State Bank, Jack Smythe, and Jon Smythe are not subject to
      "limited personal jurisdiction" by the federal district court in California.**

9

10    If a nonresident defendant's activities within the forum are not sufficiently pervasive to

11    justify the exercise of "general personal jurisdiction," a court may nevertheless assert "limited

12    (also referred to as "specific") personal jurisdiction" for a cause of action *arising out of* the

13    defendant's activities within the forum state, depending on the "nature and quality of the

14    defendant's contacts [with the forum state] in relation to the cause of action."  *Data Disc, Inc.,*

15    557 F. 2d at 1287.

16    The Ninth Circuit has established the following tripartite test for determining whether due

17    process allows for the exercise of "limited personal jurisdiction" in a given case:

18
      (1) The nonresident defendant must do some act or consummate some transaction with the
      forum or perform some act by which he ***purposefully avails*** himself of the privilege of
19    conduction of activities in the forum, thereby ***invoking the benefits and protections of its
      laws***.
20

21    (2) The claim must be one which ***arises out*** of or results from the ***defendant's forum-
      related activities***.

22    (3) Exercise of jurisdiction must be ***reasonable***.

23    *Peterson,* 771 F. 2d at 1261(emphasis added), quoting *Data Disc,* 557 F. 2d at 1287.  Each of the

24    three tests must be satisfied to permit a district court to exercise "limited personal jurisdiction"

25    over a nonresident defendant.  771 F. 2d at 1261.  The plaintiff bears the burden of satisfying the

26    first two prongs of the test.  If the plaintiff fails to satisfy either of these prongs, personal

27    jurisdiction is not established in the forum state.  *Schwarzenegger v. Fred Martin Motor*

28    *Company,* 374 F. 3d 797, 802 (9th Cir. 2004).  If the plaintiff succeeds in satisfying both of the

11

first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable.  *Id.*

a.    Purposeful Availment through Forum-Related Activities.

The first factor in determining whether the court has "limited (or "specific") personal jurisdiction" is that "the nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum."  *Data Disc,* 557 F. 2d at 1287.  Under this first prong of the three-part test, the plaintiff must establish that Defendants State Bank, Jack Smythe, and Jon Smythe either "purposefully availed" themselves of the privilege of conducting activities in California, or "purposefully directed" their activities towards California.  *Schwarzenegger,* 374 F. 3d at 802.  A "purposeful availment" analysis is most often used in suits sounding in contract. *Schwarzenegger,* 374 F. 3d at 802, citing *Doe v. Unocal Corp.,* 248 F. 3d 915, 924 (9th Cir. 2001). A "purposeful direction" analysis, on the other hand, is most often used in suits sounding in tort. *Schwarzenegger,* 374 F. 2d at 802, citing *Dole Food Co., Inc. v. Watts,* 303 F. 3d 1104, 1111 (9th Cir. 2002).

The Ninth Circuit in *Schwarzenegger* explained the "purposeful availment" test, most often used in cases sounding in contract, as follows:

> A showing that a defendant ***purposefully availed*** himself of the privilege of doing business in a forum state typically consists of evidence of a ***defendant's actions in the forum***, ***such as executing or performing a contract there.***  By taking such actions, a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus ***invoking the benefits and protections of its laws***." *Hanson v. Denkla,* 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958). ***In return for these "benefits and protections," a defendant must – as a quid pro quo – "submit to the burdens of litigation in that forum."***

374 F. 3d at 802 (emphasis added), citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985), *Cote v. Wadel,* 796 F. 2d 981, 984 (7th Cir. 1986) ("personal jurisdiction over nonresidents of a state is a quid pro quo that consists of the forum state's extending protection or other services to the nonresident"); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980) (finding no personal jurisdiction in Oklahoma where defendants "availed themselves of none of the privileges and

12

benefits of Oklahoma law").  "Purposeful availment" requires a finding that the defendant "has

performed some type of affirmative conduct which allows or promotes the transaction of business

within the forum state." *Doe,* 248 F. 3d at 924.  "However, 'an individual's contract with an out-

of-state party alone cannot automatically establish minimum contacts to support personal

jurisdiction.'" *Id.*, quoting *McGlinchy v. Shell Chemical Co.,* 845 F. 2d 802, 816 n.9 (9th Cir.

1988), quoting *Burger King,* 471 U.S. at 478.

In *Burger King* the Supreme Court stated:

> We have emphasized the need for a "highly realistic" approach that recognizes that
> "contract" is "ordinarily but an intermediate step serving to tie up prior business
> negotiations with future consequences which themselves are the real object of the
> business transaction."  It is these factors – prior negotiations and contemplated
> future consequences, along with the terms of the contract and the parties' actual
> course of dealing – that must be evaluated in determining whether the defendant
> purposefully established minimum contacts with the forum.

471 U.S. at 478-79.  The requirement of purposeful availment "ensures that a defendant will not

be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the

unilateral activity of another party or a third person." *Id.*

The Ninth Circuit in *Schwarzenegger* explained the "purposeful direction" test, most often

used in suits sounding in tort, as follows:

> A showing that a defendant purposefully directed his conduct toward a forum
> state, by contrast, usually consists of evidence of the defendant's actions outside
> the forum state that are ***directed at the forum, such as the distribution in the
> forum state of goods originating elsewhere.***  *Keeton v. Hustler Magazine, Inc.,*
> 465 U.S. 770, 774-75, 79 L.Ed. 2d 790, 104 S. Ct. 1473 (1984) (finding purposeful
> direction where the defendant published magazines in Ohio and circulated them in
> the forum state, New Hampshire); *accord Mattel, Inc. v. MCA Records, Inc.,* 296
> F. 3d 894, 899 (9th Cir. 2002) (finding purposeful direction where defendant
> distributed its pop music albums from Europe in the forum state, California); *see
> also World-Wide Volkswagen,* 44 U.S. at 297-98 (noting that a "forum State does
> not exceed its powers under the Due Process Clause if it asserts personal
> jurisdiction over a corporation that ***delivers its products into the stream of
> commerce with the expectation that they will be purchased by consumers in the
> forum State***"); *Plant Food Co-op v. Wolfkill Feed & Fertilizer Corp.,* 633 F. 2d
> 155, 158-60 (9th Cir. 1980) (relying on this language in *World-Wide Volkswagen* to
> hold that a Canadian fertilizer distributor that shipped defective or mislabeled
> fertilizer to Montana may properly be subject to personal jurisdiction there).

374 F. 3d at 803 (emphasis added).

Although the Plaintiff Rugroden's Complaint generally alleges that all of the defendants

**MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS**
CASE NO. C08 - 01964

1    "conspired to defraud Plaintiff Rugroden of his real and personal property," the Complaint does

2    not allege specific facts that constitute the intentional tort of fraud by Defendants State Bank,

3    Jack Smythe, and Jon Smythe.  The Complaint alleges Defendants State Bank and Jack Smythe

4    "switched" the legal description of the Property in the Contract for Deed, but the Complaint fails

5    to state with particularity the circumstances constituting fraud, as required by Rule 9 of the

6    Federal Rules of Civil Procedure.  There is no allegation that these defendants acted with malice

7    or intent to deceive or defraud Plaintiff.  The primary discrepancy between the legal descriptions

8    of the Property in the Sheriff's Certificate of Sale and the Contract for Deed is that the Contract

9    for Deed leaves out a strip of land where the North Beach condo office is located.  The previous

10   owner of The Pines Supper Club, Nordica, had acknowledged that it did not own the strip of land

11   where the condo office was located, and thus, State Bank could not legally convey that strip of

12   land to Plaintiff in the Contract for Deed.  Plaintiff, who held himself out as an attorney, signed

13   the Contract for Deed without objecting to the legal description of the property, even though the

14   title opinion of Plaintiff's attorney had put him on "inquiry notice as to any interest claimed by

15   North Beach Association."  Regardless of the legal description of the property, Plaintiff defaulted

16   on the payments required by the Contract for Deed, and State Bank then cancelled the Contract

17   for Deed pursuant to Minnesota law.

18       Plaintiff had told Jack Smythe on or about June 1, 1999, that he wanted to purchase the

19   Property, and State Bank and Plaintiff both signed an agreement as to the basic terms of the sale

20   on September 15, 1999, in Minnesota.  There was never an agreement to purchase the strip of

21   land where the condo office was located.  These facts do not constitute fraud on the part of these

22   defendants.  Rather, any claims that Plaintiff may have sound in contract rather than in tort.

23       In applying the "purposeful availment" test, which is applied to cases sounding in

24   contract, Defendants State Bank, Jack Smythe, and Jon Smythe did nothing to "purposefully

25   avail" themselves of the privilege of doing business in California.  They did not solicit buyers in

26   California; Plaintiff learned of and bought the subject Minnesota real estate and vehicle when he

27   was in Minnesota, staying at one of his residences in Minnesota.  Defendants executed and

28   performed the Contract for Deed in Minnesota, not in California.  Defendants did nothing to

14

1  invoke the benefits and protections of the California laws.  In fact, when Plaintiff defaulted on the

2  Contract for Deed, Defendant State Bank invoked the benefits and protections of the law of

3  Minnesota by cancelling the Contract for Deed pursuant to Minnesota law.  Plaintiff's Complaint,

4  at paragraph 46, even cites Minnesota law as being the applicable law to this case.  There should

5  be no finding of personal jurisdiction in California where these defendants have not purposefully

6  availed themselves of any of the privileges and benefits of California law.  *Schwarzenegger,* 374

7  F. 3d at 802, citing *World-Wide Volkswagen,* 444 U.S. 286.

8      Even if the "purposeful direction" test, which is most often applied to cases sounding in

9  tort, there is no basis for personal jurisdiction over these defendants in California.  Defendants

10  State Bank, Jack Smythe, and Jon Smythe did not "purposefully direct" their activities to

11  California.  *See, Rutsky & Co. v. American Special Risk Insurance Services,* 328 F. 3d 1122 (9th

12  Cir. 2003) (the defendant insurance broker intentionally directed its activities into California by

13  seeking to acquire the California firm's business by numerous contacts with the plaintiff in

14  California).  Defendants State Bank, Jack Smythe, and Jon Smythe held real property and a

15  vehicle out for sale in Minnesota, and a California resident, who was staying at one of his

16  residences in Minnesota, learned of and agreed to buy the property while he was in Minnesota.

17  These defendants never advertised the real estate or vehicle for sale in California, and they did not

18  solicit offers or bids in California.  They did not put any products into the stream of commerce

19  with the expectation that they would be purchased by consumers in California.  The property that

20  State Bank sold to Plaintiff Rugroden was real property located, sold, and delivered in Minnesota.

21  The legal description of the Minnesota real property in the Contract for Deed was written by State

22  Bank' attorney at his office in Park Rapids, Minnesota.

23      When an intentional tort claim is asserted, the "effects test" has been utilized for the

24  purposeful direction analysis.  The "effects test" requires that:

25      the defendant allegedly have (1) committed an intentional act, (2) ***expressly aimed
    at the forum state***, (3) causing harm that the defendant knows is likely to be
26      suffered in the forum state.

27  *Calder v. Jones,* 465 U.S. 783, 79 L. Ed. 2d 804, 104 S. Ct. 1482, (1984); *Dole,* 303 F. 3d at

28  1111, quoted in *Schwarzenegger,* 374 F. 3d at 803-05.

15

Memo of Law v4.doc

**MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS**
CASE NO. C08 - 01964

1    In regard to the first factor of the "effects test," Defendants State Bank, Jack Smythe, and

2   Jon Smythe did not intentionally defraud Plaintiff Rugroden.  State Bank merely sold to Plaintiff

3   what it could legally sell to him, no more.

4    In regard to the second factor of the "effects test," that the acts of the defendants be

5   "expressly aimed" at the forum state, all of the acts of Defendants State Bank and Jack Smythe

6   described above took place in Minnesota and were in regard to real property in Minnesota.  They

7   did not "expressly aim" to sell the property to California residents.  Rather, a California resident

8   happened to be staying one of his residences in Minnesota when he learned of and agreed to buy

9   the Minnesota property.

10    "Communications with a plaintiff in the forum in the form of letters, faxes, and phone

11   calls *which contain **fraudulent** misrepresentations* can constitute 'express aiming.'"  *Peacock,*

12   2006 U.S. Dist. 96844, citing *Dole,* 303 F. 3d at 1111-12 (the *Peacock* case is distinguished from

13   the present case in that the Oklahoma defendants regularly solicited California buyers for their

14   goats through their internet website, through which the plaintiff learned of the goats that were the

15   subject of their complaint; the plaintiff regularly received unsolicited e-mails from the defendants

16   at his home in California; the defendants regularly and systematically engaged in business in

17   California; the defendants traveled to California to conduct business; and the defendants

18   negotiated the subject sale of goats with the plaintiff by directing their activities to the plaintiff's

19   residence in California).   There is no allegation of "fraudulent misrepresentations" made by these

20   defendants to Plaintiff in California.  The mere fact that the Contract for Deed, which was

21   negotiated, drafted, and performed in Minnesota, was sent to Plaintiff in California for signing is

22   not sufficient to constitute "express aiming."  Plaintiff cannot come to Minnesota, learn of and

23   agree to buy Minnesota real property while he is in Minnesota, transact his supper club business

24   on the subject real property in Minnesota, and expect the Minnesota seller of the Minnesota real

25   property to be haled into California to defend against his frivolous and untimely claims regarding

26   the Minnesota transactions.  Defendants State Bank, Jack Smythe, and Jon Smythe did nothing

27   "expressly aimed at the forum state" of California.

28

Memo of Law v4.doc

**MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS**
CASE NO. C08 - 01964

The third factor of the "effects test" is that the defendants caused harm that they knew was likely to be suffered in the forum state. The Ninth Circuit has held that it is not sufficient to confer personal jurisdiction over a nonresident defendant by showing that an act outside California imposes an economic burden on a California resident. *Gonzales,* 614 F. 2d at 1253, citing *Hill v. Noble Drilling Corp.,* 61 Cal. App. 3d 258, 132 Cal. Rptr. 154, 156 (1976); *Dallas-Fort Worth Regional Airport Board v. Superior Court,* 63 Cal. App. 3d 482, 133 Cal. Rptr. 720, 721 (1976); *Peacock v. Willis,* 2006 U.S. Dist. LEXIS 96844 (E.D. CA 2006)(stating the foreseeability of causing injury in another state is not a sufficient basis on which to exercise jurisdiction). The Ninth Circuit in *Gonzales* explained that ***only the defendant's activities in California***, and ***not the plaintiff's***, can supply the basis for personal jurisdiction. 614 F. 2d at 1253. In the *Gonzales* case, Plaintiff Gonzales was an international grain trader with its principal place of business in California. Defendant Consejo was an autonomous institution of the Republic of Costa Rica charged with regulating the Costa Rican food supply by purchasing grain when needed from foreign sources and by selling surplus grain. *Id.* at 1249. From 1971 to 1974 the Costa Rican defendant transacted 15 purchases of grain from the California plaintiff and made two sales to the California plaintiff. Each transaction originated in a bid by a representative of the California plaintiff in Costa Rica in response to an invitation to bid circulated by the Costa Rican defendant in Costa Rica. Each was entered into by an agent of the California plaintiff residing in Costa Rica. There was ***frequent communication by mail and telex between the Costa Rican defendant and the California plaintiff's California office concerning the contracts***. 614 F. 2d at 1249. All the contracts specified delivery in Costa Rica. In none of the transactions, including the one in dispute, was California either the source or destination of the grain. The Costa Rican defendant made payment to the California plaintiff by having its bank in Costa Rica issue letters of credit, which a bank in California confirmed. The Costa Rican defendant had neither an office, a place of business, property, nor an agent in California. It did not advertise in California nor actively solicit business there. It never attempted to qualify for the transaction of business in California. The contract at issue in the case was entered into in Costa Rica by an exchange of letters between the Costa Rican defendant and the California plaintiff's representative in Costa

17

1    Rica. *Id.* The plaintiff had agreed to sell the defendant 10,000 metric tons of yellow corn.  The

2    defendant allegedly breached the contract by cancelling the contract before delivery.  *Id.*

3          In holding that it would be a violation of due process to require the Costa Rican defendant

4    to submit to the jurisdiction of the federal district court in California, the Ninth Circuit stated:

5

6
> The Consejo [the Costa Rican defendant] validly argues that ***use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the state.***

7    614 F. 2d at 1254 (emphasis added).

8          The facts of the present case are very similar to the *Gonzales* case.  In both cases,

9    California plaintiffs entered into contracts outside of California.   The California plaintiffs, while

10    they were in California, were in contact with the nonresident defendants outside of California, by

11    mail and telephone.  As in the *Gonzales* case, the mail and telephone contacts in the present case

12    do not qualify as purposeful activity invoking the benefits and protection of the state of

13    California.  The fact that economic harm to the California plaintiff was foreseeable was not

14    sufficient to establish jurisdiction in the *Gonzales* case, nor is it in the present case.  It "is not

15    sufficient that the plaintiff is a California resident … or that an act outside California imposes an

16    economic burden on a California resident…."  *Gonzales,* 614 F. 2d at 1253.

17          Similarly, in *Peterson v. Kennedy,* 771 F. 2d 1244, 1262 (9th Cir. 1985), the plaintiff, a

18    member of the National Football League Players Association (hereinafter "the union"), sued the

19    union's Washington, D.C. attorney for professional malpractice, claiming mismanagement of his

20    grievance claim.  Both parties agreed that the defendant's sole contacts with the forum state of

21    California consisted of a series of telephone calls that he made to the plaintiff from the union's

22    Washington, D.C. office and letters that he sent to a California physician regarding the plaintiff's

23    injury.  The Ninth Circuit held that the nature of the defendant's contacts with California were

24    insufficient as a matter of law to enable the federal court in California to exercise limited personal

25    jurisdiction over him.  The Ninth Circuit stated:

26

27
> Both this court and the courts of California have concluded that ***ordinarily "use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state."***

28

18

**MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS**
CASE NO. C08 - 01964

1  771 F. 2d at 1262 (emphasis added), quoting *Gonzales,* 614 F. 2d at 1254; *Floyd J. Harkness Co.*

2  *v. Amezcua,* 60 Cal. App. 3d 687, 692-93, 131 Cal. Rptr. 667, 670 (1976); *Interdyne Co. v. SYS*

3  *Computer Corp.,* 31 Cal. App. 3d 508, 511-12, 107 Cal. Rptr. 499, 501-02 (1973). *See also,*

4  *Tiara Computer Systems,* 1992 U.S. Dist. LEXIS at 20564. The Ninth Circuit in *Peterson* stated

5  that "such contacts are normally legally insufficient to satisfy the first prong of the *Data Disc*

6  test." 771 F. 2d at 1262.

7       In contract cases, a "showing that a defendant purposefully availed himself of the

8  privilege of doing business in a forum state typically consists of evidence of the ***defendant's***

9  ***actions in the forum,*** such as ***executing*** or ***performing*** a contract there. *Schwarzenegger,* 374 F.

10  3d at 802. "However, a contract alone does not automatically establish the requisite minimum

11  contacts necessary for the exercise of personal jurisdiction." *Gray & Co. v. Firstenberg*

12  *Machinery Co.,* 913 F. 2d 758, 760 (9th Cir. 1990). The Ninth Circuit in *Gray* stated:

13
14  Prior negotiations and contemplated future consequences, along with the terms of
     the contract and the parties' actual course of dealing are the factors to be
     considered. The foreseeability of causing injury in another state is not a sufficient
     basis on which to exercise jurisdiction.

15
16  *Gray,* 913 F. 3d at 760, citing *Burger King,* 471 U.S. at 474, 478-79.

17  Based on the foregoing, it is clear that the use of the mails and telephone by Defendants State

18  Bank and Jack Smythe to correspond with Plaintiff in California about their real estate transaction

19  in Minnesota does not qualify as purposeful activity invoking the benefits and protection of the

20  laws of California or purposeful direction of their conduct toward California, so as to satisfy the

21  first prong of the *Data Disc* test.

22                    b.    Plaintiff's Claims Do Not Arise Out of or Result from Defendants'
                            Forum - Related Activities

23       The second prong of the *Data Disc* test, that "the claim must be one which arises out of or

24  results from the defendants' forum-related activities," cannot be met, in that Plaintiff's claim

25  arises out of the defendants' activities in Minnesota. Plaintiff contends Defendants "switched"

26  the description of the Minnesota property in the Contract for Deed. The attorney for State Bank,

27  Gregory D. Larson, at his office in Park Rapids, Minnesota, wrote the legal description of The

28
                                                19                          Memo of Law v4.doc

1  Pines Supper Club in the Contract for Deed to accurately describe the Minnesota property that

2  State Bank could legally transfer to Plaintiff under the Contract for Deed.  Jon Smythe sold

3  Plaintiff a vehicle in Minnesota.  At no time did Defendants State Bank, Jack Smythe, or Jon

4  Smythe travel to California to engage in any activities related to the subject matter of this

5  litigation.

6         The Ninth Circuit applies a "but for" test to determine whether a particular claim arises

7  out of the defendant's forum-related activities and thereby satisfies the second requirement for

8  specific jurisdiction.  *Ballard v. Savage,* 65 F. 3d 1495, 1500 (9th Cir. 1995), *citing Shute,* 897 F.

9  2d 377, *rev'd on other grounds,* 499 U.S. 585, 113 L. Ed. 622, 111 S. Ct. 1522 (1991).  Although

10  the Supreme Court reversed the Ninth Circuit's decision in *Shute,* it did not reject the "but for"

11  test; it appears the test has survived.  *Ballard,* 65 F. 3d at 1500, citing *Loral Terracom v. Valley*

12  *National Bank,* 49 F. 3d 555, 561 (9th Cir. 1995).  The question in the present case is: "but for"

13  these defendants' California -related activities, would Plaintiff Rugroden's claims against these

14  defendants have arisen?  *See, Doe,* 248 F. 3d at 924; *Rutsky,* 328 F. 3d at 1131.  The answer is

15  "Yes."  Plaintiff's claims arise out of the defendants' conduct in Minnesota, and regardless of

16  where Plaintiff Rugroden signed the Contract for Deed or received the Notice of Cancellation of

17  Contract for Deed, Plaintiff's claims would have arisen.  The Notice of Cancellation of Contract

18  for Deed was also served on Plaintiff Rugroden by personally serving it on the manager of The

19  Pines Supper Club at the Property in Minnesota and by publication in the Hubbard County,

20  Minnesota, newspaper, as allowed by Minnesota Statute §559.21, Subd.4.  It is the conduct of

21  these defendants in Minnesota that provides the basis for Plaintiff's claims, and thus, the second

22  prong of the *Data Disc* test cannot be met.  Therefore, this Court in California should not exercise

23  personal jurisdiction over these defendants.

24                    c.    <u>Exercise of Jurisdiction over Defendants State Bank, Jack Smythe,</u>
                           <u>and Jon Smythe is not reasonable.</u>
25

26         The third step of the Ninth Circuit's specific jurisdiction test requires a finding that

27  assertion of jurisdiction is reasonable.  In other words, if the court concludes that Plaintiff

28  Rugroden has shown that these defendants purposefully availed themselves of the privilege of

                                          20                        Memo of Law v4.doc

conducting activities in California or purposefully directed their activities towards California, the court must then determine whether the assertion of personal jurisdiction would be reasonable, so as to comport with traditional notions of "fair play and substantial justice." *See, Doe,* 248 F. 2d at 925, citing *International Shoe,* 326 U.S. at 326. Plaintiff Rugroden cannot establish either purposeful availment / direction or a but-for relationship between these defendants' activities in California and his claims. Thus, this Court need not reach the third prong of the specific jurisdiction test, the issue of reasonableness. *Doe,* 248 F. 2d at 925.

In the event this Court does reach the third prong, the Ninth Circuit has identified seven factors that are relevant to the reasonableness inquiry. Those factors are:

(1) the ***extent*** of the defendant's purposeful injection into the forum state's affairs;

(2) the ***burden on the defendant*** of defending in the forum;

(3) the extent of ***conflict*** with the ***sovereignty of the defendant's state***;

(4) the ***forum state's interest*** in adjudicating the dispute;

(5) the ***most efficient judicial resolution*** of the controversy;

(6) the importance of the ***forum*** to the ***plaintiff's interest in convenient and effective relief;***

(7) the existence of an ***alternative forum***.

*Dole,* 303 F.3d at 1114 (emphasis added). If the plaintiff has met his burden of proving "purposeful availment" or "purposeful direction" and the "but for" relationship (which Plaintiff Rugroden has not done), there is a presumption of reasonableness, with which the burden shifts to the defendant to make a "compelling case that the presence of some other considerations that would make jurisdiction unreasonable." *Ballard,* 65 F. 3d at 1500.

In regard to the first factor of the reasonableness inquiry, "the ***extent*** of the defendant's purposeful injection into the forum state's affairs," courts look to the ***degree*** of the ***defendant's interjection in the forum*** state. *Rutsky,* 328 F. 3d at 1132 (holding this factor weighed against the defendant when twenty percent of the defendant's business was conducted in California, the defendant's contacts with the plaintiff in California were frequent, and the contract at issue was

**MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS**
CASE NO. C08 - 01964

Memo of Law v4.doc

1  consummated and for the most part performed in California); *Core-Vent Corp. v. Nobel Industries*

2  *AB,* 11 F. 3d 1482 1484, 1488 (9th Cir. 1993) (this factor weighed in favor of the defendant when

3  the defendant's only contact with the forum state was writing an article alleged to have targeted a

4  California resident). This first factor weighs in favor of Defendants State Bank and Jack Smythe

5  who had very few and infrequent contacts with Plaintiff Rugroden in California; they never

6  advertised, solicited bids, or did business in California; and the Contract for Deed at issue was

7  negotiated, agreed to, and performed in Minnesota.  Jon Smythe had no contacts with California

8  that could be considered "purposeful injection into the forum state's affairs."

9      In regard to the second factor, the burden on the defendant of defending in the forum, it is

10  an unreasonable burden to require these Minnesota defendants to defend these claims in

11  California regarding a contract negotiated and performed in Minnesota in regard to Minnesota

12  property.  All of the parties and witnesses, except Plaintiff, reside in Minnesota, and California is

13  an inconvenient forum for them.  The plaintiff's convenience is not of paramount importance.

14  *Dole,* 303 F. 3d at 1116.  Defendants would have to incur the substantial expenses of traveling to

15  California and staying in California if the trial is held in California.  They will also have to pay

16  substantial expenses for all of the witnesses, who reside in Minnesota, to travel to California to

17  testify at the trial, if it is held in California.  Although State Bank has legal counsel in Minnesota

18  who do most of the its legal work and who are familiar with Plaintiff's conduct, State Bank, Jack

19  Smythe, and Jon Smythe are required to retain local counsel in California.  The burdens on these

20  defendants to litigate in California are substantial, and thus, this factor weighs heavily in favor of

21  the defendants.

22      In regard to the third and fourth factors relevant to the reasonableness inquiry, the extent

23  of conflict with the sovereignty of the defendants' state and the forum state's interest in

24  adjudicating the dispute, the state of Minnesota has a much stronger interest than the state of

25  California in adjudicating issues related to real property in Minnesota.  *See, Coastland*

26  *Corporation v. North Carolina Wildlife Resources Commission,* 134 N.C. App. 342,346, 517

27  S.E.2d 661 (Ct. App. N.C. 1999) (recognizing that the state has an interest in adjudicating

28  controversies regarding real property within its borders).  People buying and selling real property

22

Memo of Law v4.doc

**MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS**
CASE NO. C08 - 01964

1    in Minnesota should be able to rely on the fact that Minnesota courts will decide issues related to

2    the sale and title of that real property in Minnesota.  Minnesota has a greater interest than

3    California in adjudicating this controversy regarding Plaintiff's Minnesota supper club business

4    purchased in Minnesota from a Minnesota bank.

5         In regard to the fifth factor, the most efficient judicial resolution of the controversy,

6    Plaintiff has been a party to other cases regarding the Property in Hubbard County, Minnesota.  In

7    fact, the boundary lines of the Property at issue in the present case were litigated and settled in

8    *North Beach Association; North Beach Condominium First Section Association; Leading Edge*

9    *Aviation, Inc.; and Omasa Trust, Inc. v. Gene Rugroden and State Bank,* Case No. C7-00-705, in

10   Hubbard County District Court in Minnesota.  In the *North Beach* case, after Plaintiff defaulted

11   on the Contract for Deed and State Bank cancelled the Contract for Deed, State Bank settled all

12   property line disputes regarding the Property with the adjacent property owners in 2002.  The

13   Hubbard County District Court is familiar with the other cases involving Plaintiff in Hubbard

14   County, including the issues regarding the Property that have been litigated in Hubbard County,

15   and thus, the most efficient judicial resolution of this controversy can be accomplished in

16   Hubbard County District Court in Minnesota.

17        Moreover, the sources of proof are in Minnesota.  The site where most of the events in

18   question took place and where evidence is located usually will be the most efficient forum.

19   *Amoco Egypt Oil Co. v. Leonis Navigation Co.,* 1 F. 3d 848, 852 (9th Cir. 1993); *Fields v.*

20   *Sedgewick Associated Risks, Ltd.*, 796 F. 2d 299, 302 (9th Cir. 1986).  All of the witnesses, except

21   Plaintiff, reside in Minnesota.  The trial witnesses known at this time will include the following

22   Minnesota residents: Jack Smythe, Jon Smythe, Jerry Janz, Gregory D. Larson, Sue Smythe,

23   Jeremy Monroe, David Lyng, Charles D. Hagen, George W. Hill, Neal Narveson, and James

24   Wallace.  The other Minnesota defendants undoubtedly will have other Minnesota trial witnesses.

25   Only the Minnesota courts can require Minnesota witnesses to testify live at trial, and only

26   Minnesota courts can produce Minnesota witnesses at depositions related to this matter.

27   Therefore, the fifth factor weighs heavily in favor of these defendants.

28        In regard to the sixth factor of the reasonableness inquiry, the importance of the forum to

**MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS**
CASE NO. C08 - 01964

1  the plaintiff's interest in convenient and effective relief, although the California court may be

2  more convenient for Plaintiff Rugroden, that fact is not sufficient reason to exercise jurisdiction

3  over these Minnesota defendants.  In determining whether the exercise of personal jurisdiction

4  over a nonresident defendant is reasonable, the plaintiff's convenience is not of paramount

5  importance.  *See, Dole,* 303 F. 3d at 1116; *Rutsky,* 328 F. 3d at 1133; *Caruth v. International*

6  *Psychoanalytical Ass'n,* 59 F. 3d 126, 129 (9th Cir. 1995).  Plaintiff also owns residences in

7  Hubbard County, Minnesota, where he presumably could stay during a trial in Minnesota.

8  Plaintiff is a pilot, who has often flown in and out of Hubbard County, Minnesota, from

9  California using his corporation's airplanes.  Contrary to Plaintiff's allegations in paragraph 36 of

10  his Complaint, that "[d]ue to Plaintiff Rugroden's concern for the safety of all concerned he has

11  not been able to set foot in Hubbard County since 2004," Plaintiff was present in Hubbard

12  County, Minnesota, from April 17 to April 20, 2008.  The only justifiable concern that Plaintiff

13  has is the concern of what will happen to him once he returns to Minnesota and submits to the

14  lawful jurisdiction of the courts in Minnesota to face the consequences of his misconduct in

15  Minnesota.  That has never been a valid consideration in regard to this factor.

16      In regard to the seventh factor of the reasonableness inquiry, the existence of an

17  alternative forum, the plaintiff has the burden of proving the unavailability of an alternative

18  forum.  *Amoco,* 1 F. 3d at 853.  Plaintiff can litigate his claims in Minnesota.  Plaintiff's

19  allegations in paragraph 2 of his Complaint, that he "has not been afforded due process in

20  Superior Court situated in Park Rapids, Minnesota due to a conspiracy by two or more persons to

21  injure, oppress, threaten and intimidate Plaintiff, witnesses, and others," are nonsense.  In regard

22  to his allegations against the Hubbard County, Minnesota, judges in paragraph 37 and both

23  paragraphs numbered 41, Judge Mondry's Order and Memorandum of September 25, 2003, filed

24  herewith, Exhibit K, outlines Plaintiff's misrepresentations to the Court and his other wrongful

25  conduct.  Judge Mondry, who has since retired, correctly applied the law in ruling against

26  Plaintiff.  Judge Rasmussen rightfully ordered judgment in favor of State Bank and against

27  Plaintiff on March 26, 2008, when Plaintiff failed to show up for a hearing, which Plaintiff had

28  scheduled, and Plaintiff failed to call the Court Administrator's office before the hearing to

24

1    request leave to appear by telephone.  Plaintiff has failed to appear for other hearings, as well as

2    his own trial, in Hubbard County.  Order and Memorandum of Judge Mondry dated

3    September 25, 2003.  Exhibit K.  It is true that the judges in Hubbard County, Minnesota, are

4    familiar with Plaintiff's conduct and the litigation that Plaintiff has been a party to in Hubbard

5    County, but Plaintiff does have a forum in Hubbard County, Minnesota, where the allegations in

6    the present case can be presented.  This factor weighs in favor of these defendants.

7          The seven factors relevant to the reasonableness inquiry overwhelmingly favor

8    Defendants State Bank, Jack Smythe, and Jon Smythe, such that the exercise of personal

9    jurisdiction over them in California does not comport with fair play and substantial justice.  These

10   defendants never sought out Plaintiff's business in California, and State Bank and Jack Smythe

11   had very few and infrequent contacts with Plaintiff in California.  Jon Smythe had no contact with

12   Plaintiff in California.

## V.     CONCLUSION.

14         Based on the foregoing, Plaintiff cannot meet his burden of demonstrating that this federal

15   court in California should exercise "general jurisdiction" or "specific personal jurisdiction" over

16   Defendants State Bank, Jack Smythe, and Jon Smythe.

17         WHEREFORE, Defendants State Bank, Jack Smythe, and Jon Smythe hereby respectfully

18   request this Court to grant their Motion to Dismiss, pursuant to rule 12(b)(2) of the Federal Rules

19   of Civil Procedure, for lack of personal jurisdiction.

DATED:  May 22, 2008                    REHON & ROBERTS
                                        A Professional Corporation


                                        By:   Mark V. Isola  /s/
                                              Peter M. Rehon
                                              Mark V. Isola
                                              Attorneys for Defendants
                                              STATE BANK, JACK SMYTHE, and JON
                                              SMYTHE

Memo of Law v4.doc

**MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS**
CASE NO. C08 - 01964