Peter M. Rehon (SBN 100123)
Mark V. Isola (SBN 154614)
REHON & ROBERTS
A Professional Corporation
Ten Almaden Blvd., Suite 550
San Jose, CA 95113-2238
Telephone: (408) 494-0900
Facsimile: (408) 494-0909

Attorneys for Defendants
STATE BANK OF PARK RAPIDS,
JACK SMYTHE, and JON SMYTHE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Jose Division)

| | |
|---|---|
| GENE RUGRODEN,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE BANK OF PARK RAPIDS; JACK SMYTHE; JON SMYTHE; CITY OF PARK RAPIDS, MN; NORTH BEACH ASSOCIATION, ET AL.; CHUCK HAGEN, DOES 1 through 100,<br><br>    Defendants. | Case No. C08 - 01964<br><br>**AFFIDAVIT OF JACK D. SMYTHE IN SUPPORT OF MOTION TO DISMISS BY STATE BANK OF PARK RAPIDS, JACK SMYTHE, AND JON SMYTHE**<br><br>**Date: September 5, 2008**<br>**Time: 9:00 a.m.**<br>**Courtroom: 3**<br><br>**Honorable Jeremy Fogel** |

I, JACK D. SMYTHE, declare:

1. I am one of the defendants in the above-entitled matter, and I have personal knowledge of the matters contained herein, and if called as a witness, I could and would competently testify thereto.

2. I am a citizen and resident of Hubbard County, Minnesota.

3. From 1999 to February 2008 I was the President and CEO of State Bank of Park Rapids. I am still employed by State Bank of Park Rapids on a part-time basis in a consulting marketing position.

4. In the spring and summer of 1999 my daughter, Sue Smythe, was dating Gene Rugroden in Minnesota. Gene Rugroden resided in California, but he was an accomplished pilot,

1

**AFFIDAVIT OF JACK D. SMYTHE ISO MOTION TO DISMISS**
CASE NO. C08 - 01964

1 who regularly flew to and from Hubbard County, Minnesota. While he was in Minnesota, Gene
2 Rugroden stayed at one of the residences he owned in Hubbard County, Minnesota.

3     5. In the spring of 1999, Sue Smythe told Gene Rugroden, while he was in
4 Minnesota, that State Bank of Park Rapids had foreclosed on The Pines Supper Club property on
5 Potato Lake in Hubbard County, Minnesota, adjacent to the North Beach condominium
6 development, and State Bank was trying to sell The Pines Supper Club property.

7     6. On or about June 1, 1999, Gene Rugroden, while he was in Minnesota, told me, as
8 President of State Bank of Park Rapids, in Minnesota, that he wanted to purchase The Pines
9 Supper Club property from State Bank of Park Rapids. At a face-to-face meeting at State Bank of
10 Park Rapids in Minnesota I told Gene Rugroden the price that State Bank had to have for The
11 Pines Supper Club property.

12     7. On September 15, 1999, Gene Rugroden and I, on behalf of State Bank of Park
13 Rapids, both signed the Amendment to Pines Property Offer at State Bank of Park Rapids in
14 Minnesota, agreeing to the terms of the sale of The Pines Supper Club property by State Bank of
15 Park Rapids to Gene Rugroden. A true copy of the Amendment to the Pines Property offer, on
16 which both my original signature and Gene Rugroden's original signature appear, both signatures
17 being dated September 15, 1999, is being filed herewith and marked Exhibit L. This document
18 was made and kept in the ordinary course of business of State Bank of Park Rapids.

19     8. There was no representation by me, or anyone from State Bank of Park Rapids,
20 that State Bank of Park Rapids was selling a strip of land where the North Beach Association
21 condominium office was located on the north end of the Administration Building Parcel, which
22 was adjacent to The Pines Supper Club. Gene Rugroden made no representations to me that he
23 wanted to purchase the strip of land where the North Beach Association condominium office was
24 located.

25     9. At no time did State Bank of Park Rapids or I advertise, invite bids, or solicit
26 buyers for The Pines Supper Club property in California.

27     10. In December 1999, State Bank of Park Rapids sent Gene Rugroden, who was in
28 California at the time, the Contract for Deed regarding The Pines Supper Club to sign. Gene

**AFFIDAVIT OF JACK D. SMYTHE ISO MOTION TO DISMISS**
CASE NO. C08 - 01964

1  Rugroden signed the Contract for Deed on December 24, 1999, and returned it to State Bank of
2  Park Rapids.  I insisted that Gene Rugroden sign the Contract for Deed before he opened The
3  Pines Supper Club for business on New Year's Eve, December 31, 1999, as I was concerned
4  about liquor and premises liability when The Pines Supper Club was opened for business.

5        11.    Gene Rugroden held himself out as an attorney or as having law school training,
6  and thus, he had the ability to read and object to the legal description in the Contract for Deed
7  before signing it.

8        12.    A controversy developed in regard to the legal description of The Pines Supper
9  Club property in the Contract for Deed regarding a strip of land where the North Beach
10 Association condominium office was located.  Since State Bank of Park Rapids' title was derived
11 from what title the previous owner, Nordica Food Service, Inc. (hereinafter Nordica) had, and
12 since David Lyng, as President of Nordica, acknowledged that Nordica had relinquished any
13 claim it had to the strip of land where the condo office was located, because of a valid claim of
14 adverse possession, State Bank of Park Rapids could not sell the strip of land where the
15 condominium office was located to Gene Rugroden in the Contract for Deed.  As such, State
16 Bank of Park Rapids did not include the strip of land where the condo office was located in the
17 legal description of The Pines Supper Club property in the Contract for Deed.

18       13.    State Bank of Park Rapids and I were not conspiring to defraud or deceive Gene
19 Rugroden in regard to the description of the property.  Gene Rugroden had his own attorney,
20 James Wallace, give him a title opinion on the The Pines Supper Club property in December
21 1999.  I was informed that James Wallace's title opinion, which was directed to Gene Rugroden
22 and dated December 3, 1999, stated that some recorded documents regarding North Beach
23 Association, North Beach Camping Preserve, Inc. and Miles Homes, Inc. used a legal description
24 that appeared to overlap with The Pines property being abstracted.  Attorney James Wallace's
25 title opinion of December 3, 1999, directed to Gene Rugroden stated, "You are placed on inquiry
26 notice as to any interest claimed by North Beach Association or North Beach Camping Preserve,
27 Inc."  This information is outlined in the letter of Dan Carlisle to State Bank of Park Rapids dated
28 November 15, 2000, a true copy of which is being filed herewith and is marked Exhibit M.  This

**AFFIDAVIT OF JACK D. SMYTHE ISO MOTION TO DISMISS**
CASE NO. C08 - 01964

1  document is part of the records of State Bank of Park Rapids that are made and kept in the
2  ordinary course of its business.

3      14.    Regardless of the property description in the Contract for Deed, Gene Rugroden
4  defaulted on the payments required by the Contract for Deed, when he had insufficient funds in
5  his account at State Bank of Park Rapids from which the automatic loan payments could be taken,
6  and when Gene Rugroden refused to otherwise make the loan payments.  Gene Rugroden
7  defaulted on another loan obligation to State Bank of Park Rapids at about the same time.  Upon
8  Gene Rugroden's default, State Bank of Park Rapids legally, through its attorney, Gregory D.
9  Larson, legally cancelled the Contract for Deed regarding The Pines Supper Club property,
10 pursuant to Minnesota law.

11     15.    I have looked through all of my personal correspondence from 1999 to 2008,
12 which was made and kept in the ordinary course of business at State Bank of Park Rapids, for
13 correspondence with Gene Rugroden.  The only letters that I have found, either from me to Gene
14 Rugroden or from Gene Rugroden to me, are attached hereto and marked Exhibit N.  Exhibit N
15 contains true and complete copies of two letters sent by me, as President of State Bank of Park
16 Rapids, to Gene Rugroden in Los Gatos, California, dated March 6, 2002, and September 2, 2004.
17 The letter dated March 6, 2002, relates to Gene Rugroden's refusal to sign an Amendment to the
18 Contract for Deed regarding to "The Pines Supper Club" property in the North Beach
19 development on Potato Lake in Hubbard County, Minnesota, which property is at issue in the
20 present case.  The letter dated September 2, 2004, relates to State Bank of Park Rapids'
21 foreclosure on Gene Rugroden's half-interest in a Lawrence Lake, Ontario, cabin, which was
22 pending in the Canadian legal system.  My letter dated September 2, 2004, to Gene Rugroden
23 does not relate to "The Pines Supper Club" property issues in the present case.

24     16.    My letter dated March 6, 2002, to Gene Rugroden refers to a fax of March 4 and a
25 telephone conversation I had with Gene Rugroden on March 4, 2002.  I have no record or
26 recollection of any other telephone calls from me to Gene Rugroden in California, and I do not
27 believe I talked with Gene Rugroden in California over the telephone at any other time about
28

matters related to the subject matter of the above-entitled action. Gene Rugroden apparently tried to make himself hard to find and contact in California.

17. Defendants State Bank of Park Rapids and I have never had an office, personnel, or business agents in California. State Bank of Park Rapids and I have never been registered to do business in California, we have never performed banking services or other business in California, and we have never paid taxes in California. State Bank of Park Rapids and I have done nothing to purposefully avail ourselves of the privilege of conducting activities in California, thereby invoking the benefits and protections of the laws of California. State Bank of Park Rapids and I have never done any acts expressly aimed at the forum state of California. We have never shipped any products to California or put any products into the stream of commerce with the expectation that the products would reach California. At no time did I travel to California to engage in any activities or transact any business related to the subject matter of the above-entitled litigation.

18. The contacts of State Bank of Park Rapids and me with the forum state of California are limited to letters and legal notices sent by mail or facsimile to Gene Rugroden in California and a telephone call by me to Gene Rugroden in California, which are disclosed in the documents being filed herewith.

19. State Bank of Park Rapids has three judgments in Hubbard County, Minnesota, against Gene Rugroden, totaling approximately $154,415. True copies of those judgments are being filed herewith and marked Exhibit H. A Sheriff's Sale was scheduled to execute on two of those judgment liens against Gene Rugroden. The sale was previously scheduled for April 24, 2008, but it had to be rescheduled to May 22, 2008, when the attorneys for State Bank of Park Rapids learned that the federal government has a federal tax lien against Gene Rugroden in the amount of $425,000. Since the federal government had to be given notice of the Sheriff's Sale, the date of the sale was changed to May 22, 2008, to allow for proper notice time.

20. Gene Rugroden's apparent purposes in filing the above-entitled matter are to delay the Sheriff's Sale of his real property in Hubbard County, Minnesota, and to harass State Bank of Park Rapids, Jack Smythe, and Jon Smythe. Gene Rugroden told my daughter, Sue Smythe, who

1  is the Executive Vice President of State Bank of Park Rapids, that before he [Gene Rugroden]
2  was done with State Bank, it would cost the bank "hundreds of thousands of dollars" in attorneys'
3  fees. On at least two prior occasions when State Bank of Park Rapids has attempted to execute on
4  its judgment liens against Gene Rugroden, Gene Rugroden has filed bankruptcy in California to
5  stay the Sheriff's Sales. Gene Rugroden has filed bankruptcy in California three times in the last
6  two years, and all of those bankruptcies have been dismissed by the bankruptcy court in
7  California due to Gene Rugroden's failure to comply with the rules or orders of the Court. True
8  copies of the Orders dismissing Gene Rugroden's bankruptcies are being filed herewith and
9  marked Exhibit I.

10      21.   Gene Rugroden has been a party to other cases filed in Hubbard County,
11  Minnesota, regarding The Pines Supper Club property. The boundary lines of The Pines Supper
12  Club property at issue in the present case was litigated and settled in *North Beach Association;*
13  *North Beach Condominium First Section Association; Leading Edge Aviation, Inc.; and Omasa*
14  *Trust, Inc. v. Gene Rugroden and State Bank of Park Rapids,* Case No. C7-00-705, in Hubbard
15  County District Court in Minnesota. In the *North Beach* case, in 2002 after Gene Rugroden
16  defaulted on the Contract for Deed regarding The Pines Supper Club and State Bank of Park
17  Rapids cancelled the Contract for Deed regarding the property, State Bank of Park Rapids settled
18  all property line disputes in regard to The Pines Supper Club property. A true copy of the
19  Settlement Agreement, which is made and kept in the ordinary course of business of State Bank
20  of Park Rapids, is being filed herewith and marked Exhibit F.

21      22.   Gene Rugroden alleges in his Complaint that "[d]ue to Plaintiff Rugroden's
22  concern for the safety of all concerned he has not been able to set foot in Hubbard County since
23  2004." Gene Rugroden was present in Hubbard County, Minnesota, from April 17 to April 20,
24  2008. I am not aware of any evidence that should give Gene Rugroden concern for his safety in
25  Minnesota. In regard to Gene Rugroden's "concern for the safety of *all* concerned," I have been
26  told that Gene Rugroden has made threatening remarks to residents of Hubbard County. One
27  example of Gene Rugroden's threatening behavior in Hubbard County is evidenced by a letter
28  from Neal Narveson, as manager of the North Beach condominium development, to me dated

**AFFIDAVIT OF JACK D. SMYTHE ISO MOTION TO DISMISS**
CASE NO. C08 - 01964

1  September, 13, 2002, a true copy of which is attached hereto and marked Exhibit J.  This letter is
2  made and kept in the ordinary business of State Bank of Park Rapids.  According to that letter,
3  Gene Rugroden threatened the manager of the North Beach development by informing him
4  "about all of the money he [Gene Rugroden] has, about his status as an attorney who loves a good
5  legal fight, and the fact that he travels the world and is sometimes charged with the business duty
6  of 'killing people.'"

7      23.    In regard to Gene Rugroden's allegations in his Complaint about the Hubbard
8  County judges, Judge Mondry has since retired.  On March 26, 2008, Judge Paul Rasmussen of
9  the Hubbard County District Court ordered judgment against Gene Rugroden in favor of State
10 Bank of Park Rapids when Gene Rugroden failed to show up for a motion hearing that Gene
11 Rugroden had scheduled.  The clerk stated at the hearing that Gene Rugroden failed to call the
12 Court Administrator's office before the hearing to request leave to appear by telephone.  Gene
13 Rugroden has failed to appear for other hearings in which State Bank of Park Rapids has been
14 involved, as well as for his own trial in Hubbard County, as evidenced by Judge Mondry's Order
15 and Memorandum in the *North Beach* case, dated September 25, 2003, a true copy of which is
16 being filed herewith and marked Exhbit K.

17     I declare under penalty of perjury under the laws of the State of California that the facts
18 stated herein are true and correct to the best of my knowledge and belief.  Executed on this 23rd
19 day of May, at Park Rapids, Minnesota.

20
21     ___Jack D. Smythe  /s/____
    Jack D. Smythe

7

Affidavit of Jack Smythe_v2.doc

**AFFIDAVIT OF JACK D. SMYTHE ISO MOTION TO DISMISS**
CASE NO. C08 - 01964