1  Jon K. Iverson (MN Atty ID 146389)
2  IVERSON REUVERS
3  9321 Ensign Avenue South
   Bloomington, MN  55438
4  Telephone:  (952) 548-7200
5  Facsimile:  (952) 548-7210
6  jiverson@iversonlaw.com

7  Admitted *pro hac vice*
8  Attorneys for Defendant
9  CITY OF PARK RAPIDS, MN

10  Carol L. Healey, State Bar No. 61461
11  BISHOP, BARRY, HOWE, HANEY & RYDER
12  2000 Powell Street, Suite 1425
    Emeryville, CA  94608
13  (510) 596-0888
14

15              UNITED STATES DISTRICT COURT
16
17            NORTHERN DISTRICT OF CALIFORNIA
18                    (San Jose Division)

19  GENE RUGRODEN,                    | Case No. C08-01964 JF RS
20
21                    Plaintiff,      | **AFFIDAVIT OF JON K. IVERSON IN**
22        vs.                          | **SUPPORT OF MOTION TO DISMISS**
                                       | **BY DEFENDANT CITY OF PARK**
23  STATE BANK of PARK RAPIDS,        | **RAPIDS, MN**
24  JACK SMYTHE, JON SMYTHE,
25  CITY OF PARK RAPIDS, MN,
26  NORTHBEACH ASSOCIATION            | **Date:  September 5, 2008**
    et al, CHUCK HAGEN               | **Time:  9:00 a.m.**
27  DOES 1 thru 100,                 | **Courtroom:  3**
28                                    | **Honorable Jeremy Fogel**
                    Defendants.
29
30
31
32  I, JON K. IVERSON, declare:

---

1

**AFFIDAVIT OF JON K. IVERSON, PARK RAPIDS' MOTION TO DISMISS**
CASE NO. C08-01964

1    1.    I am an attorney duly licensed to practice law in the State of Minnesota. I have been

2    admitted to practice in the Northern District of California on a *pro hac vice* basis representing

3    Defendant City of Park Rapids, Minnesota, in the above-entitled action.

4    2.    Attached as Exhibit A is the Complaint (ECF Documents 1 and 2).

5    3.    Attached as Exhibit B is the Summons to the City of Park Rapids.

7    I declare under penalty of perjury under the laws of the State of California that the facts

8    stated herein are true and correct to the best of my knowledge and belief. Executed on this 23rd

9    day of June, 2008, at Bloomington, Minnesota.

10

11    _____Jon K. Iverson /s/_____

12

13    Jon K. Iverson

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

2

**AFFIDAVIT OF JON K. IVERSON, PARK RAPIDS' MOTION TO DISMISS**
CASE NO. C08-01964



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNA**

FILED

2008 APR 15 A 9 9

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

C 08    01964

JF

RS

GENE RUGRODEN

    Plaintiff

    vs.

STATE BANK of PARK RAPIDS,
JACK SMYTHE, JON SMYTHE
CITY OF PARK RAPIDS, MN,
NORTHBEACH ASSOCIATION
et al.,CHUCK HAGEN
DOES 1 thru 100

    Defendants.

COMPLAINT FOR
CONSPIRACY TO DEPRIVE
CIVIL RIGHTS and PROPERTY

ADR

E-FILING

Fee Paid
NP
99



Plaintiff alleges the following based upon the investigation by Plaintiff, which

included, among other things, a review of defendants' files and court records, statements

by individuals, newspaper articles, correspondence with the entities named above and

others.

Plaintiff believes that substantial evidentiary support will exist for the allegations set

forth herein after a reasonable opportunity for discovery.

### SUMMARY OF ACTION

1.   This is a federal action against a cast of players that have conspired to defraud

Plaintiff Rugroden of his real and personal property, cause Plaintiff extreme

mental anguish and hurt livelihood continuously from mid 1999 through the present.

**(PERIOD)**

1



EXHIBIT
A

2.    Plaintiff Rugroden has not been afforded due process in Superior Court situated

in Park Rapids, Minnesota due to conspiracy by two or more persons to

injure, oppress, threaten and intimidate Plaintiff, witnesses and others.

### JURISDICTION AND VENUE

3.    This complaint is for an amount greater than $75,000.00.

4.    Plaintiff in this case has continuously resided in Santa Clara County,

in the state of California.

5.    Defendants reside in Hubbard County, in the state of Minnesota.

6.    Defendants have used the United States Postal Service and other package

services including but not limited to UPS and FedEx in their commission of

these offenses on Plaintiff Rugroden in Santa Clara County, California.

7.    Due to Plaintiff Rugroden's concern for his own safety, he believes the Federal

Court in his home county of Santa Clara, California should adjudicate this complaint.

### PARTIES

8.    Plaintiff Gene Rugroden purchased several Real Estate parcels and vehicles,

From Defendants.  Gene Rugroden re-started the restaurant business know as "The

Pines Supperclub" and was in the process of repairing the Park Rapids MN Armory

For Community use.

9.    State Bank of Park Rapids, is a state chartered community bank situated in

Hubbard County, state of Minnesota.  State Bank of Park Rapids sold the Pines

Supper Club property and a 1995 vehicle to Gene Rugroden in 1999 and 2000.

10. Jack Smythe and Jon Smythe were officers and shareholders of State

Bank of Park Rapids.

2

11. City of Park Rapids is situated in Hubbard County, State of Minnesota. The City

Of Park Rapids sold the Park Rapids Armory to Plaintiff Gene Rugroden in 1999.

The City of Park Rapids converted all of Plaintiff Rugroden's property in

a city owned aircraft hanger to its own use.

12. Northbeach Association is situated on Potato Lake in Hubbard County next to

The Pines Supperclub property.

### SUBSTANTIVE ALLEGATIONS

13. On or about 1JUN99, Plaintiff, Rugroden, agreed with Jack Smythe of State

Bank to purchase on a Deed for Contract from State Bank of Park Rapids the property

known as "The Pines Supperclub" on about eleven acres situated on approximately

five hundred lakefront feet on Potato lake, Minnesota that State Bank had foreclosed

on.

14. On or about 15JUN99, Jack Smythe turned possession of the Pines property

over to Plaintiff, Rugroden.

15.    On or about 15JUN99, Park Rapids attorney James Wallace reviewed the Pines

property abstract and property description and agreed that it matched that property

description State Bank had foreclosed on and owned.

16. On or about 1JUL99, Plaintiff Rugroden, secured a building permit to add on to

The Pines Supperclub restaurant and living space above about two thousand square

feet and a 15 foot by 30 foot walk in refrigerator and freezer.

17.    Between 1JUL99 and 30DEC99 Plaintiff Rugroden completed the addition and

performed the necessary repairs and upgrades to allow the Pines Supperclub to re-

open 31DEC99.

3

17. On or about 26DEC99, Jack Smythe posted overnight to California the

Contract for Deed for Plaintiff Rugroden to sign, notarize and send back over night

to Jack Smythe of State Bank of Park Rapids. Jack Smythe insisted that this was

urgent, as he wanted to close the deal before the end of the year.

19.    When received on or about 28DEC99, Plaintiff Rugroden did sign, notarize and

Posted overnight the above mentioned Contract for Deed on the Pines property.

20. By the end of 2000 Plaintiff Rugroden learned that the Contract for Deed

Property description on the Pines property had been switched.  When Plaintiff

Rugroden queried Jack Smyth about the switch; his reply was that attorney Greg Larson

made the changes to "make things go more smoothly." Greg Larson was also, at the

time, the County Attorney for Hubbard County.

21. When the Contract for Deed for the Pines property was to be renewed on or

about the end of 2002, Jack Smythe insisted that Plaintiff Rugroden sign a new

Contract for Deed with the switched property description.

22. When Plaintiff Rugroden insisted that the property description conform to that

Which Attorney James Wallace had reviewed and that State Bank defend the property

bundle of rights, Defendant State Bank stopped taking automatic loan payments from

Plaintiff Rugroden's State Bank checking account and took possession and control of

The Pines Supper  Club property.

23. Chuck Hagen, et al caused the water pressure to the pines property to drop below

Ten pounds per square inch in the restaurant Friday and Saturday nights.  Chuck Hagen

controlled the water line for Northbeach et al.

24. When Plaintiff Rugroden tried to connect the restaurant to a well on the Pines

4

Supperclub property known as the "BLUFF WELL" Superior Court Judge Jay Mondry

Forbid Plaintiff Rugroden from using "the bluff well", enforced by Hubbard county

deputies.

25. Plaintiff then contracted to drill another well. (TENNIS COURT WELL) on the

Pines Supperclub property.

26. Judge Mondry forbid Plaintiff Rugroden from running plumbing on the pines

property from the tennis court well to the Pines Supper Club building, enforced by

Hubbard county deputies.

27. A community pumping station to leach fields on the pines property pumps

sewage from the Pines Supper Club.

28. The sewage pumping station is under the control of Chuck Hagen et al and was

not maintained properly spilling sewage near Potato Lake.  This system supports

Northbeach Association and Chuck Hagen's home.

29. Judge Mondry ordered the sewer line from the Pines Supperclub be

disconnected. The Pines Supperclub and the leach field preceded Northbeach and

Chuck Hagens operation.

30. Hubbard County Sheriff deputies and others harassed, intimidated and interfered

with Plaintiff Rugroden's business and property and caused Plaintiff Rugroden

extreme mental anguish.

31.  Plaintiff Rugroden sent to Hubberd County Sheriff, Gary Mills several letters

suggesting public corruption and other acts against Plaintiff Rugroden's property, and

safety.  Hubbard County Sheriff, Gary Mills replied that the complaints were civil in

nature and would not take any further action.

32.  In 2000 and 2001 Plaintiff purchased condo units 14 and 15 in Northbeach.

33.  In 2001 Chuck Hagen et al. tore most of the roofs and the siding and decks off Plaintiff's units 14 and 16 in Northbeach.

34.  Plaintiff Rugroden hired a contractor to re-roof units 14 and 16.  A Hubbard County Sheriff deputy and investigator told the contractor that he would not be allowed to work on the roofs on Judge Mondry's orders.

35.  Due to the disrepair of units 14 and 16, the elements ruined all the interior sheet rock and furnishings.  A tenant had to move out of unit 14 due to the damage.

36.  Due to Plaintiff Rugroden's concern for the safety of all concerned he has not Been able to set foot in Hubbard County since 2004.

## LOSS CAUSATION

37.  Plaintiff Rugroden learned in 2007 Judge Mondry had court bailiffs under his control by demanding which deputies were to be assigned to the court, and setting the deputies salaries.

38.  Hubbard County deputies intruded into a rental home owned by Plaintiff Rugroden on Lake Belletaine in Hubbard County claiming to be looking for Plaintiff Rugroden scaring the renters off in 2003.  The property not to be rented since.

39.  In 2003 a Hubbard county deputy requested citizens to alert him when Plaintiff was is town because Plaintiff Rugroden was going to be arrested.

40.  Plaintiff Rugroden was pulled over by an self described out of county police Officer after midnight and conveyed the message that Plaintiff was not welcome and Plaintiff's safety was at jeopardy.

41.  Judge Mondry refused to allow Plaintiff Rugroden to appear telephonically

6

in his Court.

41. In March of 2008 Judge Rassmussen has not approved Plaintiff Rugroden to

Appear telephonically in a hearing.

42. With Plaintiff Rugroden unable to appear, lack of proper service and concern for

his safety, Defendants agreed to deprive Plaintiff Rugroden of his property and

businesses.

43. City of Park Rapids, Minnesota confiscated the contents of Plaintiff Rugroden's

Hangar included, a 1996 Chevy truck, Aero floats, constructions equipment and tools

etc. and refused to provide any information or accounting of the confiscation. Value:

greater that $48.000.00. Giving him nothing.

44. City of Park Rapids took back the Park Rapids Armory after Plaintiff Rugroden

Spent over $160,000.00 on repairs giving Plaintiff Rugroden nothing.

45. Northbeach association took over condo units 14 and 16 giving Plainteff

Rugroden nothing.

46. State Bank of Park Rapids took back the Pines Property, also taking

Personal property, giving Plainteff Rugroden nothing.  State Bank did not personally

Serve any Cancellation of Contract for Deed notice as required. Tarpy v. Nowicki,

286 Minn. 257,175 N.W. 2d 443 (1970);  Minn. Stat. 559.21


## FIRST CLAIM

47. Plaintiff repeats and realleges each and every allegation contained above as if

Fully set forth herein.

48. During the PERIOD Defendants carried out a plan, scheme and course of

7

conduct which was intended to and, throughout the PERIOD, did:

    a.  relieve Plaintiff Rugroden of over $935,000.00 in property, rents and investments.

    b.  cause Plaintiff Rugroden severe mental anguish.

49. Each of the Individual Defendants' primary liability and controlling person liability, arises from the following facts: (i) The individual defendants were high-level executives and/or directors at the entities during the PERIOD and members of the management teams or had control thereof; (ii) each of these defendant personnel enjoyed personal contact and familiarity with other entity personnel; and (iii) each of these defendant personnel knew of the violation of Plaintiff Rugroden's rights.

      **WHEREFORE,** Plaintiff prays for relief and judgment, as follows:

Damages:

| | | |
|---|---|---|
| 1. | Investment in the Pines Supperclub property | $260,000.00 |
| 2. | Value of Unit 14 and 16 Condo units. | $200,000.00 |
| 3. | Investment in the Park Rapids Armory | $160,000.00 |
| 4. | Value of Vehicle, tools and floats in hangar | $51,000.00 |
| 5. | Lost rents, Lake Belletaine | $21,000.00 |
| 6. | Mental anguish | $1,000,000.00 |
| 7. | Punitive and exemplary | $15,228,000.00 |
| 8. | For costs of this action; | |
| 9. | For attorney fees; and | |
| 10. | For such other and further relief as the Court deems just and proper. | |

8

Dated:    AUG08

Gene Rugroden
1157 Tilton Dr.
Sunnyvale, CA 94087
408.781.0071
408.739.2929 fax

## VERIFICATION

I verify I have read the above and agree with it.

Dated:    AUG08

Gene Rugroden

9

# Sheriff resumes bailiff oversight

By Frank Zaworski

A regime change at the 9th District Court in Park Rapids has resulted in Hubbard County sheriff Gary Mills resuming full responsibility for court security.

Previously, recently retired judge Jay Mondry preferred to schedule bailiffs himself as well as tell the county how much they should be paid.

Incoming Judge Paul Rasmussen found that practice to be untenable.

In a December 14 letter to Mills, Rasmussen said that by law, the responsibili-

ty for court security lies with the county board and the sheriff.

"I do not know how or why the existing arrangement came to be regarding the scheduling and compensation for bailiffs in Hubbard County," Rasmussen wrote. "The shifting and blurring of responsibility is problematic, however, and may raise liability issues and even compromise court security itself.

"My request is simply that the county formally resumes its responsibility for court security and all bailiff matters.

the notched Sheriff. The board elected Cal

contract occurred Nov. 29, he said the violation

and, along with the COUNTY...to page 6

At its meeting last week, the Hubbard County board of commissioners discussed the issue.

"I have no problem resuming bailiff training and scheduling," Mills told the commissioners.

"As long as the sheriff's office understands the concern's there is no reason the sheriff's office shouldn't handle it," said commissioner Dick Devine.

The commissioners agreed to transfer the budget funds for bailiffs from the district court budget to the sheriff's budget.

## SNOWMOBILERS HAVE BEEN DESPERATE to get out and ride. These tracks were made when a couple of inches of snow fell last week, but rain washed most of the powder away, leaving only grass and ice, on much of the alternate trail near Nevis.

Industry, call snow while "gold," Park Rapids Lakes Area Commerce director Katie Magozzi said. "We are looking at destination planning for how to be a winter destination regardless of the weather. We have a lot going for us," Photo by Lorie Skarpness.

# No snow, no business

By Lorie Skarpness

Many area businesses are longing for the sight of snow. Snowmobilers coming up north to stay, play, and spend their money. Instead, those eager to get out on the trails must fly to the mountains of Colorado, or Montana to find snow.

On Friday, Dec. 29, a couple of inches of snow fell, clinging to every branch, but that evening's hard and steady rain melted much of the snow and turned many country roads and driveways into glacial-like ponds.

That is hurting area businesses that count on tourists to sustain them during the time between deer hunting

and the fishing opener. Many area businesses are longing for the sight of snow. Snow is "white gold" for the tourism industry in Park Rapids Lakes Area Chamber of Commerce director Katie Magozzi said the lack of snow and unseasonably warm weather that affects the quality of ice fishing in the area have had a very significant negative impact on this area.

"We in the tourism industry call snow white gold," she said. "When the tourists aren't here, it has a negative impact on gas stations, resorts, hotels and bed and breakfasts, grocery stores and restaurants."

from the corner of the basement of their home in Brainerd and are now on a campus in Pine River on new business which is a research, and development of sustainable living.

In the beginning stages of their business, Paul worked on the development of a renewable energy that transmitted data from point A to point B using almost no power. His idea was to transmit data slowly within an ultra narrow bandwidth, which evolved into electrical power meter readers called Turtles. These Turtle transmitters send electrical information back to power substations, and not only read meters for billing purposes, but also collect

began the business in 1983

AFTER SELLING a previous business, Paul and Lynn Huntimer moved into a trailer on the campus of the company for sustainable living.

power outages.

When they sold their bus success, at the peak of the technology that embraced this patented sales of land near down and by 1999 Hunt Technologies con structed a $3 million build town Pine River becau ing located near Pequot they wanted to be with walking distance of 200 people in the manufac downtown. They the turing of Turtles. moved a used trailer hou

Paul and Lynn's love of onto the property to live story was an American story - a because they wanted to us story where ingenuity, hard their resources to create work and a bit of luck pro research and developme duce success and wealth. business for sustainab Three years ago the Hunts living called Hunt Utilitie

TURTLES...to page 13

Gary Mills                                              23AUG06
Hubbard County Sheriff
300 Court Street
Park Rapids, MN 56470

Dear Gary,

    I guess it is time to ask for your assistance.

You have knowledge of most of the following. This is memorializing my request to you,
and starts my quest for justice.

In the summer of 1999 I purchased from Jack Smythe (State Bank of Park Rapids) the
Pines Supperclub property on a contract for deed. State Bank had foreclosed on the
property. In June of 1999 Jack gave me possession to construct an addition and prepare
for a 31DEC99 grand opening and New Year's Eve party. Jack suggested that the
paperwork would follow. I traveled to and from my other business commitments while
the construction was in progress. During the last week of 1999 Jack called me urgent to
close the sale sending me contracts overnight. He further requested that I sign, Notarize,
and overnight the contracts to him. On about July 1999 my attorney and I reviewed the
property description of the Pines property the bank had foreclosed on. The contracts,
written by Greg Larson (also the County Attorney) contained a, undetected by me, a
different property description. In the spring of 2000 Chuck Hagen, Neil Narveson,
Omasa Trust, Leading Edge Aviation et. al., filed suit against me and State Bank,
claiming many rights to the Pines property. It was at this time that I discovered the
switched property description. The change removed an important piece including
beachfront. When I queried State Bank, Jack Smyth indicated that the county attorney
(Greg Larson) made the change, favoring Chuck Hagen, "to make things go smoothly."

About the same timeframe I purchased two Northbeach condominiums and two, one-
week intervals at Northbeach.

At one time, Chuck Hagen owned the Pines property, and the condo property. The water
for the restaurant came from a well at the north end of the north condo building. The
sewer for the restaurant ran through the condo property to a leach field on the Pines
property.

At peak restaurant times in 2000 and 2001, the water pressure dropped to less than 10 psi.
At the same time I noted that the water pressure in my condo was over 35 psi, indicating

that somewhere in the condo pool house or thereabout the flow was restricted. The water conditioner was turned off causing rust to come into the restaurant, ruining my commercial dishwasher and new commercial water heater. When I tried to use the well on the Pines property, Judge Mondry forbid me from doing anything with my well. I then contracted to drill a new well near the restaurant. When I started to connect the well to the restaurant, Judge Mondry forbid it with Sheriff's deputies arriving to enforce it. At that time I design a pump system to increase the water pressure and installed a commercial water conditioner.

Shortly after I purchased the condominiums and the week intervals Chuck Hagen tore up the roofs on my condominiums so as to cause the roofs to leak very badly and tore the decks off and much siding. I contracted to have the roofs repaired and re-shingled. On two occasions when the contractor tried to do the work, the sheriff's department responded with orders from Judge Mondry forbidding work on the roofs. A Sheriff's deputy and investigator arrived to enforce. All of the contents and sheetrock was destroyed. The tenant moved out. As a final blow, Judge Mondry cut off the sewer system serving the restaurant.

At least seven Lawyers, three experts, one CPA and a handful of others including witnesses have tried unsuccessfully to resolve problems. When I show the facts to a lawyer, I find no one interested to get involved for the obvious reasons. Witnesses have been run off and/or intimidated.

In Addition, I have had Sheriff deputies intrude into buildings on my property, terrorize renters, running them off, hurting my business and reputation, searching for me in 2003. On 30MAY03 I was ticketed at 2230 on the new bypass south of town. The officer would not give his name or sign the ticket. He crossed out what looks like badge number 2183 and put in number 5339. (Appendix E) He said he was helping out the Park Rapids Police department from Wadina. The contact was very uncomfortable.

On or about October 2005 a friend was visited by a Sheriff deputy and told to notify the deputy if I showed up in town as an arrest warrant was out for me. He further stated that Mr. Volden took my truck and the water tower and other property and aircraft equipment was being taken from me.

A great deal of effort has been expended to keep me out of town. It appears that the Park Rapids police department is also working toward that end. Most of the court proceedings have been either concealed from me or notices have not reached me. In several instances when I found out the day or the day before a scheduled court date, Judge Mondry would not let me appear telephonically and proceeded without me. One time I had traveled to Park Rapids for an appearance, I was sick with the flu. Unable to make the date, called the court for a continuance and was denied.

This month I discovered that the same players and proxies are mounting a coordinated effort to steal more of my property.

As you can expect, loosing one and a quarter million dollars is not something that I will walk away from. This does not include Money Judge Mondry has caused me to give to "experts, Arbitrators and a Receiver" or attorney costs.

As a result of this organized and coordinated effort, I have been stripped of the assets found in Appendix A. Also in Appendix A, the assets at risk. All of this was taken from me with absolutely $0.00 in return.

More importantly, I have not been able to come to Park Rapids to see my son for over two and a half years because of fear for the safety of all concerned and my freedom. I have not seen him at all for over 16 months.

I believe your department is the first place look for justice. If it is not, please advise me. At this time, you and my California attorney are the only recipients receiving this communication.

Please feel free to contact me via phone or e-mail at any time.

Regards,

Gene Rugroden

Case 5:08-cv-01964-JF    Document 1-2    Filed 04/15/2008    Page 1 of 1

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

**I. (a) PLAINTIFFS**
GENE RUGRODEN

**DEFENDANTS**
State Bank of Park Rapids, MN, Jack Smythe, Jon Smythe, City of Park Rapids, Northbeach Association, Chuck Hagen

(b) County of Residence of First Listed Plaintiff  Santa Clara, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Hubbard , MN
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Gene Rugroden

Attorneys (If Known)

ADR    E-FILING    C08  01964    JF    RS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)          and One Box for Defendant)

|   | PTF | DEF |   | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related Seizure | 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury — | of Property 21 USC 881 | | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product | [ ] 650 Airline Regs. | [ ] 830 Patent | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | Liability | [ ] 660 Occupational | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| Student Loans | [ ] 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | [ ] 490 Cable/Sat TV |
| (Excl. Veterans) | [ ] 345 Marine Product | [ ] 370 Other Fraud | [ ] 690 Other | | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment | Liability | [ ] 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/ |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | [ ] 710 Fair Labor Standards | [ ] 861 HIA (1395ff) | Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | Property Damage | Act | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge |
| [ ] 190 Other Contract | Product Liability | [ ] 385 Property Damage | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | Product Liability | [ ] 730 Labor/Mgmt.Reporting | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | | & Disclosure Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | | [ ] 892 Economic Stabilization Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | [ ] 791 Empl. Ret. Inc. | [ ] 870 Taxes (U.S. Plaintiff | [ ] 894 Energy Allocation Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | Habeas Corpus: | Security Act | or Defendant) | [ ] 895 Freedom of Information |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party | Act |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | | 26 USC 7609 | [ ] 900 Appeal of Fee |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities — | [ ] 540 Mandamus & Other | **IMMIGRATION** | | Determination |
| | Employment | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | Under Equal Access |
| | [ ] 446 Amer. w/Disabilities — | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus — | | to Justice |
| | Other | | Alien Detainee | | [ ] 950 Constitutionality of |
| | [ ] 440 Other Civil Rights | | [ ] 465 Other Immigration | | State Statutes |
| | | | Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
TITLE 18 PART I CHPT 96 1962; CHPT 13 241
Brief description of cause:
CONSPIRACY TO DEPRIVE CIVIL RIGHTS AND PROPERTY

**VII. REQUESTED IN COMPLAINT:**
CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ 16,920,000.00    CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

**VIII. RELATED CASE(S) IF ANY**
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)**
(PLACE AND "X" IN ONE BOX ONLY)
[ ] SAN FRANCISCO/OAKLAND    [X] SAN JOSE

DATE    15APR08
SIGNATURE OF ATTORNEY OF RECORD

```
Court Name: U.S. District Court, NDCA
Division: 5
Receipt Number: 54611002957
Cashier ID: harwellt
Transaction Date: 04/15/2008
Payer Name: Skie International LLC
-----------------------------------
CIVIL FILING FEE
  For: Gene Rudgroden
  Case/Party: D-CAN-5-08-CV-001964-001
  Amount:        $350.00
-----------------------------------
CHECK
  Check/Money Order Num: 64302
  Amt Tendered:  $350.00
-----------------------------------
Total Due:       $350.00
Total Tendered:  $350.00
Change Amt:      $0.00

Case # 08-cv-01964-JF


Checks and drafts are accepted
subject to collections and full
credit will only be given when the
check or draft has been accepted by
the financial institution on which
it was drawn.
```

AO 440 (Rev. 03/08) Civil Summons

# UNITED STATES DISTRICT COURT

for the

Northern District of California

RECEIVED

APR 1 8 2008

BY:------------------------

| | |
|---|---|
| GENE RUGRODEN | ) |
| Plaintiff | ) |
| v. | ) |
| STATE BANK of PARK RAPIDS et al. | ) |
| Defendant | ) |
| | ) |

Civil Action No.    C08 01964

## Summons in a Civil Action

To:    CITY of PARK RAPIDS
       *(Defendant's name)*

A lawsuit has been filed against you.

Within  30  days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, whose name and address are:

GENE RUGRODEN
1157 TILTON DRIVE
SUNNYVALE, CA 94087

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Date:  *16 Apr 08*

Richard W. Wieking
Name of clerk of court

Deputy clerk's signature

*(Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States allowed 60 days by Rule 12(a)(3).)*


EXHIBIT
B
tabbies

AO 440 (Rev. 03/08) Civil Summons (Page 2)

## Proof of Service

I declare under penalty of perjury that I served the summons and complaint in this case on ___16 APR 08___,
by:

    (1) personally delivering a copy of each to the individual at this place, _____ ; or

    (2) leaving a copy of each at the individual's dwelling or usual place of abode with _____
        who resides there and is of suitable age and discretion; or

    (3) delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is
        ___BRIAN WEUVE_____ ; or

    (4) returning the summons unexecuted to the court clerk on _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

Date: ___16 APR 08___

_____
Server's signature

JOAN ALLAN
Printed name and title

PO BOX 1418 LOS GATOS CA
Server's address
95031

**JS 44** (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
GENE RUGRODEN

## DEFENDANTS
State Bank of Park Rapids, MN, Jack Smythe, Jon Smythe, City of Park Rapids, Northbeach Association, Chuck Hagen

(b) County of Residence of First Listed Plaintiff  Santa Clara, CA
    (EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Hubbard , MN
    (IN U.S. PLAINTIFF CASES ONLY)
    NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
           LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Gene Rugroden

Attorneys (If Known)

**ADR**

**E-FILING**

# C08 01964   JF

**RS**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question (U.S. Government Not a Party)
- [X] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury — Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting | | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | [ ] 791 Empl. Ret. Inc. Security Act | | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | [ ] 540 Mandamus & Other | **IMMIGRATION** | | |
| | [ ] 440 Other Civil Rights | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus - Alien Detainee | | |
| | | | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from another district (specify)
- [ ] 6  Multidistrict Litigation
- [ ] 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
TITLE 18 PART I CHPT 96 1962; CHPT 13 241
Brief description of cause:
CONSPIRACY TO DEPRIVE CIVIL RIGHTS AND PROPERTY

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ 16,920,000.00    CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)    [ ] SAN FRANCISCO/OAKLAND    [X] SAN JOSE

DATE
15APR08
SIGNATURE OF ATTORNEY OF RECORD

**ORIGINAL**
**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

08 APR 15  AM 9: 58

**C08   01964**   **JF**

RICHARD W. WIEKING
U.S. DISTRICT COURT
NO. DIST OF CA S.J.

**RS**

|                                        |   |
|----------------------------------------|---|
| GENE RUGRODEN                          | ) |
|                                        | ) |
| Plaintiff                              | ) |
|                                        | ) |
| vs.                                    | ) |
|                                        | ) |
| STATE BANK of PARK RAPIDS,             | ) |
| JACK SMYTHE, JON SMYTHE                 | ) |
| CITY OF PARK RAPIDS, MN,               | ) |
| NORTHBEACH ASSOCIATION                 | ) |
| et al.,CHUCK HAGEN                     | ) |
| DOES 1 thru 100                        | ) |
|                                        | ) |
| Defendants.                            | ) |

COMPLAINT FOR
CONSPIRACY TO DEPRIVE
CIVIL RIGHTS and PROPERTY

**ADR**

**E-FILING**

Plaintiff alleges the following based upon the investigation by Plaintiff, which included, among other things, a review of defendants' files and court records, statements by individuals, newspaper articles, correspondence with the entities named above and others.

Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF ACTION

1.   This is a federal action against a cast of players that have conspired to defraud Plaintiff Rugroden of his real and personal property, cause Plaintiff extreme mental anguish and hurt livelihood continuously from mid 1999 through the present. **(PERIOD)**

·1

04/22/2008  10:36   2187324425   AVENSON INSURANCE   PAGE  08

2.    Plaintiff Rugroden has not been afforded due process in Superior Court situated in Park Rapids, Minnesota due to conspiracy by two or more persons to injure, oppress, threaten and intimidate Plaintiff, witnesses and others.

## JURISDICTION AND VENUE

3.    This complaint is for an amount greater than $75,000.00.

4.    Plaintiff in this case has continuously resided in Santa Clara County, in the state of California.

5.    Defendants reside in Hubbard County, in the state of Minnesota.

6.    Defendants have used the United States Postal Service and other package services including but not limited to UPS and FedEx in their commission of these offenses on Plaintiff Rugroden in Santa Clara County, California.

7.    Due to Plaintiff Rugroden's concern for his own safety, he believes the Federal Court in his home county of Santa Clara, California should adjudicate this complaint.

## PARTIES

8.    Plaintiff Gene Rugroden purchased several Real Estate parcels and vehicles, From Defendants.  Gene Rugroden re-started the restaurant business know as "The Pines Supperclub" and was in the process of repairing the Park Rapids MN Armory For Community use.

9.    State Bank of Park Rapids, is a state chartered community bank situated in Hubbard County, state of Minnesota.  State Bank of Park Rapids sold the Pines Supper Club property and a 1995 vehicle to Gene Rugroden in 1999 and 2000.

10. Jack Smythe and Jon Smythe were officers and shareholders of State Bank of Park Rapids.

04/22/2008  10:36   2187324425                    AVENSON INSURANCE                    PAGE  09

11. City of Park Rapids is situated in Hubbard County, State of Minnesota. The City

Of Park Rapids sold the Park Rapids Armory to Plaintiff Gene Rugroden in 1999.

The City of Park Rapids converted all of Plaintiff Rugroden's property in

a city owned aircraft hanger to its own use.

12. Northbeach Association is situated on Potato Lake in Hubbard County next to

The Pines Supperclub property.

## SUBSTANTIVE ALLEGATIONS

13. On or about 1JUN99, Plaintiff, Rugroden, agreed with Jack Smythe of State

Bank to purchase on a Deed for Contract from State Bank of Park Rapids the property

known as "The Pines Supperclub" on about eleven acres situated on approximately

five hundred lakefront feet on Potato lake, Minnesota that State Bank had foreclosed

on.

14. On or about 15JUN99, Jack Smythe turned possession of the Pines property

over to Plaintiff, Rugroden.

15.     On or about 15JUN99, Park Rapids attorney James Wallace reviewed the Pines

property abstract and property description and agreed that it matched that property

description State Bank had foreclosed on and owned.

16. On or about 1JUL99, Plaintiff Rugroden, secured a building permit to add on to

The Pines Supperclub restaurant and living space above about two thousand square

feet and a 15 foot by 30 foot walk in refrigerator and freezer.

17.     Between 1JUL99 and 30DEC99 Plaintiff Rugroden completed the addition and

performed the necessary repairs and upgrades to allow the Pines Supperclub to re-

open 31DEC99.

3

17. On or about 26DEC99, Jack Smythe posted overnight to California the Contract for Deed for Plaintiff Rugroden to sign, notarize and send back over night to Jack Smythe of State Bank of Park Rapids. Jack Smythe insisted that this was urgent, as he wanted to close the deal before the end of the year.

19.    When received on or about 28DEC99, Plaintiff Rugroden did sign, notarize and Posted overnight the above mentioned Contract for Deed on the Pines property.

20. By the end of 2000 Plaintiff Rugroden learned that the Contract for Deed Property description on the Pines property had been switched. When Plaintiff Rugroden queried Jack Smyth about the switch; his reply was that attorney Greg Larson made the changes to "make things go more smoothly." Greg Larson was also, at the time, the County Attorney for Hubbard County.

21. When the Contract for Deed for the Pines property was to be renewed on or about the end of 2002, Jack Smythe insisted that Plaintiff Rugroden sign a new Contract for Deed with the switched property description.

22. When Plaintiff Rugroden insisted that the property description conform to that Which Attorney James Wallace had reviewed and that State Bank defend the property bundle of rights, Defendant State Bank stopped taking automatic loan payments from Plaintiff Rugroden's State Bank checking account and took possession and control of The Pines Supper Club property.

23. Chuck Hagen, et al caused the water pressure to the pines property to drop below Ten pounds per square inch in the restaurant Friday and Saturday nights. Chuck Hagen controlled the water line for Northbeach et al.

24. When Plaintiff Rugroden tried to connect the restaurant to a well on the Pines

Supperclub property known as the "BLUFF WELL" Superior Court Judge Jay Mondry

Forbid Plaintiff Rugroden from using "the bluff well", enforced by Hubbard county

deputies.

25. Plaintiff then contracted to drill another well. (TENNIS COURT WELL) on the

Pines Supperclub property.

26. Judge Mondry forbid Plaintiff Rugroden from running plumbing on the pines

property from the tennis court well to the Pines Supper Club building, enforced by

Hubbard county deputies.

27. A community pumping station to leach fields on the pines property pumps

sewage from the Pines Supper Club.

28. The sewage pumping station is under the control of Chuck Hagen et al and was

not maintained properly spilling sewage near Potato Lake.  This system supports

Northbeach Association and Chuck Hagen's home.

29. Judge Mondry ordered the sewer line from the Pines Supperclub be

disconnected. The Pines Supperclub and the leach field preceded Northbeach and

Chuck Hagens operation.

30. Hubbard County Sheriff deputies and others harassed, intimidated and interfered

with Plaintiff Rugroden's business and property and caused Plaintiff Rugroden

extreme mental anguish.

31.  Plaintiff Rugroden sent to Hubberd County Sheriff, Gary Mills several letters

suggesting public corruption and other acts against Plaintiff Rugroden's property, and

safety.  Hubbard County Sheriff, Gary Mills replied that the complaints were civil in

nature and would not take any further action.

32. In 2000 and 2001 Plaintiff purchased condo units 14 and 15 in Northbeach.

33. In 2001 Chuck Hagen et al. tore most of the roofs and the siding and decks off Plaintiff's units 14 and 16 in Northbeach.

34. Plaintiff Rugroden hired a contractor to re-roof units 14 and 16. A Hubbard County Sheriff deputy and investigator told the contractor that he would not be allowed to work on the roofs on Judge Mondry's orders.

35. Due to the disrepair of units 14 and 16, the elements ruined all the interior sheet rock and furnishings. A tenant had to move out of unit 14 due to the damage.

36. Due to Plaintiff Rugroden's concern for the safety of all concerned he has not Been able to set foot in Hubbard County since 2004.

## LOSS CAUSATION

37. Plaintiff Rugroden learned in 2007 Judge Mondry had court bailiffs under his control by demanding which deputies were to be assigned to the court, and setting the deputies salaries.

38. Hubbard County deputies intruded into a rental home owned by Plaintiff Rugroden on Lake Belletaine in Hubbard County claiming to be looking for Plaintiff Rugroden scaring the renters off in 2003. The property not to be rented since.

39. In 2003 a Hubbard county deputy requested citizens to alert him when Plaintiff was is town because Plaintiff Rugroden was going to be arrested.

40. Plaintiff Rugroden was pulled over by an self described out of county police Officer after midnight and conveyed the message that Plaintiff was not welcome and Plaintiff's safety was at jeopardy.

41. Judge Mondry refused to allow Plaintiff Rugroden to appear telephonically

6

04/22/2008  18:36    2187324425                         AVENSON  INSURANCE                        PAGE  13

in his Court.

41. In March of 2008 Judge Rassmussen has not approved Plaintiff Rugroden to

Appear telephonically in a hearing.

42. With Plaintiff Rugroden unable to appear, lack of proper service and concern for

his safety, Defendants agreed to deprive Plaintiff Rugroden of his property and

businesses.

43. City of Park Rapids, Minnesota confiscated the contents of Plaintiff Rugroden's

Hangar included, a 1996 Chevy truck, Aero floats, constructions equipment and tools

etc. and refused to provide any information or accounting of the confiscation. Value:

greater that $48.000.00. Giving him nothing.

44. City of Park Rapids took back the Park Rapids Armory after Plaintiff Rugroden

Spent over $160,000.00 on repairs giving Plaintiff Rugroden nothing.

45. Northbeach association took over condo units 14 and 16 giving Plainteff

Rugroden nothing.

46. State Bank of Park Rapids took back the Pines Property, also taking

Personal property, giving Plainteff Rugroden nothing.  State Bank did not personally

Serve any Cancellation of Contract for Deed notice as required. Tarpy v. Nowicki,

286 Minn. 257,175 N.W. 2d 443 (1970);  Minn. Stat. 559.21


## FIRST CLAIM

47. Plaintiff repeats and realleges each and every allegation contained above as if

Fully set forth herein.

48. During the PERIOD Defendants carried out a plan, scheme and course of

7

04/22/2008  10:56    2187324425    AVENSON INSURANCE    PAGE  14

conduct which was intended to and, throughout the PERIOD, did:

    a.  relieve Plaintiff Rugroden of over $935,000.00 in property, rents and investments.

    b.  cause Plaintiff Rugroden severe mental anguish.

49. Each of the Individual Defendants' primary liability and controlling person liability, arises from the following facts: (i) The individual defendants were high-level executives and/or directors at the entities during the PERIOD and members of the management teams or had control thereof; (ii) each of these defendant personnel enjoyed personal contact and familiarity with other entity personnel; and (iii) each of these defendant personnel knew of the violation of Plaintiff Rugroden's rights.

    **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

Damages:

| | | |
|---|---|---|
| 1. | Investment in the Pines Supperclub property | $260,000.00 |
| 2. | Value of Unit 14 and 16 Condo units. | $200,000.00 |
| 3. | Investment in the Park Rapids Armory | $160,000.00 |
| 4. | Value of Vehicle, tools and floats in hangar | $51,000.00 |
| 5. | Lost rents, Lake Belletaine | $21,000.00 |
| 6. | Mental anguish | $1,000,000.00 |
| 7. | Punitive and exemplary | $15,228,000.00 |
| 8. | For costs of this action; | |
| 9. | For attorney fees; and | |
| 10. | For such other and further relief as the Court deems just and proper. | |

Dated:     AUG08

_Gene Rugroden_
Gene Rugroden
1157 Tilton Dr.
Sunnyvale, CA 94087
408.781.0071
408.739.2929 fax


## VERIFICATION

I verify I have read the above and agree with it.

Dated:     AUG08                              _Gene Rugroden_
                                              Gene Rugroden

9

# Sheriff resumes bailiff oversight

By Frank Zaworski

A major change at the Rapids area resulted in 9th District Court in Park County.

Rishard has resulted in why the existing arrangement came to be regarding Gary Mills resuming full responsibility for court security.

Previously, recently retired judge Jay Monday preferred to schedule bailiffs himself as well as bill the county how much they should be paid.

Incoming judge Paul Rasmussen found this practice to be intolerable.

In a December 14 letter to Mills, Rasmussen said that by law, the responsibility for court security lies with the sheriff.

"I do not know how or why the existing arrangement came to be regarding scheduling and compensation for bailiffs in Rishard County. Rasmussen wrote.

"I have no problem resuming bailiff, training and scheduling," Mills told the commissioners.

"As long as the sheriff's office understands to the county, there is no reason the sheriff's office shouldn't handle it," said commissioner Dick Divine.

The commissioners agreed to transfer the budgeted funds for bailiffs from the district court budget to the sheriff's budget.



SNOWMOBILERS HAVE BEEN DES-PERATE to get out and ride. These tracks were made when a couple of inch of snow fell last week, but rain washed most of the powder away, leaving only grass and ice on much of the alternate trail near Nevis. "We're in the tourism business," Park Rapids Lakes Area Chamber of Commerce director Katie Magozzi said. "We are hoping an strategic planning for how to be a winter destination regardless of the weather. We have a lot going for us." Photo by Loris Skarpness.

# No snow, no business

By Loris Skarpness

Many area businesses are longing for the sight of snow in "white gold."

With snowmobilers coming up north to stay, play and spend their money, instead, many must fly to the mountains of Colorado or fishing in the area have had a very significant impact on this area.

On Friday, Dec. 29, a couple of inches of snow fell, clinging to every branch, but the evening's hard and steady rain melted much of the snow and turned many country roads and driveways into glacial-like ponds.

This is hurting area businesses that count on tourism to sustain them during the time between deer hunting and the fishing opener.

"When the tourists aren't here, it has a negative impact," she said.

"We in the tourism industry call snow white gold," she said.

"The season's grocery stores, gas stations, bars and bed and breakfast, grocery stores and restaurants," delightful up north, snow or no snow. NO SNOW, to page 4

04/22/2008  10:36   2187324425          AVENSON INSURANCE                        PAGE   17

Gary Mills                                              23AUG06
Hubbard County Sheriff
300 Court Street
Park Rapids, MN 56470

Dear Gary,

    I guess it is time to ask for your assistance.

You have knowledge of most of the following. This is memorializing my request to you, and starts my quest for justice.

In the summer of 1999 I purchased from Jack Smythe (State Bank of Park Rapids) the Pines Supperclub property on a contract for deed. State Bank had foreclosed on the property. In June of 1999 Jack gave me possession to construct an addition and prepare for a 31DEC99 grand opening and New Year's Eve party. Jack suggested that the paperwork would follow. I traveled to and from my other business commitments while the construction was in progress. During the last week of 1999 Jack called me urgent to close the sale sending me contracts overnight. He further requested that I sign, Notarize, and overnight the contracts to him. On about July 1999 my attorney and I reviewed the property description of the Pines property the bank had foreclosed on. The contracts, written by Greg Larson (also the County Attorney) contained a, undetected by me, a different property description. In the spring of 2000 Chuck Hagen, Neil Narveson, Omasa Trust, Leading Edge Aviation et. al., filed suit against me and State Bank, claiming many rights to the Pines property. It was at this time that I discovered the switched property description. The change removed an important piece including beachfront. When I queried State Bank, Jack Smyth indicated that the county attorney (Greg Larson) made the change, favoring Chuck Hagen, "to make things go smoothly."

About the same timeframe I purchased two Northbeach condominiums and two, one-week intervals at Northbeach.

At one time, Chuck Hagen owned the Pines property, and the condo property. The water for the restaurant came from a well at the north end of the north condo building. The sewer for the restaurant ran through the condo property to a leach field on the Pines property.

At peak restaurant times in 2000 and 2001, the water pressure dropped to less than 10 psi. At the same time I noted that the water pressure in my condo was over 35 psi, indicating

that somewhere in the condo pool house or thereabout the flow was restricted. The water conditioner was turned off causing rust to come into the restaurant, ruining my commercial dishwasher and new commercial water heater. When I tried to use the well on the Pines property, Judge Mondry forbid me from doing anything with my well. I then contracted to drill a new well near the restaurant. When I started to connect the well to the restaurant, Judge Mondry forbid it with Sheriff's deputies arriving to enforce it. At that time I design a pump system to increase the water pressure and installed a commercial water conditioner.

Shortly after I purchased the condominiums and the week intervals Chuck Hagen tore up the roofs on my condominiums so as to cause the roofs to leak very badly and tore the decks off and much siding. I contracted to have the roofs repaired and re-shingled. On two occasions when the contractor tried to do the work, the sheriff's department responded with orders from Judge Mondry forbidding work on the roofs. A Sheriff's deputy and investigator arrived to enforce. All of the contents and sheetrock was destroyed. The tenant moved out. As a final blow, Judge Mondry cut off the sewer system serving the restaurant.

At least seven Lawyers, three experts, one CPA and a handful of others including witnesses have tried unsuccessfully to resolve problems. When I show the facts to a lawyer, I find no one interested to get involved for the obvious reasons. Witnesses have been run off and/or intimidated.

In Addition, I have had Sheriff deputies intrude into buildings on my property, terrorize renters, running them off, hurting my business and reputation, searching for me in 2003. On 30MAY03 I was ticketed at 2230 on the new bypass south of town. The officer would not give his name or sign the ticket. He crossed out what looks like badge number 2183 and put in number 5339. (Appendix E) He said he was helping out the Park Rapids Police department from Wadina. The contact was very uncomfortable.

On or about October 2005 a friend was visited by a Sheriff deputy and told to notify the deputy if I showed up in town as an arrest warrant was out for me. He further stated that Mr. Volden took my truck and the water tower and other property and aircraft equipment was being taken from me.

A great deal of effort has been expended to keep me out of town. It appears that the Park Rapids police department is also working toward that end. Most of the court proceedings have been either concealed from me or notices have not reached me. In several instances when I found out the day or the day before a scheduled court date, Judge Mondry would not let me appear telephonically and proceeded without me. One time I had traveled to Park Rapids for an appearance, I was sick with the flu. Unable to make the date, called the court for a continuance and was denied.

This month I discovered that the same players and proxies are mounting a coordinated effort to steal more of my property.

As you can expect, loosing one and a quarter million dollars is not something that I will walk away from. This does not include Money Judge Mondry has caused me to give to "experts, Arbitrators and a Receiver" or attorney costs.

As a result of this organized and coordinated effort, I have been stripped of the assets found in Appendix A. Also in Appendix A, the assets at risk. All of this was taken from me with absolutely $0.00 in return.

More importantly, I have not been able to come to Park Rapids to see my son for over two and a half years because of fear for the safety of all concerned and my freedom. I have not seen him at all for over 16 months.

I believe your department is the first place look for justice. If it is not, please advise me. At this time, you and my California attorney are the only recipients receiving this communication.

Please feel free to contact me via phone or e-mail at any time.

Regards,

Gene Rugroden

04/22/2008  10:36    2187324425          AVENSON INSURANCE                    PAGE  20

ORIGINAL

UNITED STATES DISTRICT COURT FILED
NORTHERN DISTRICT OF CALIFORNA
08 APR 15  AM 9: 59

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST OF TX S.J.

No.

# C 08 - 01964

JF

REQUEST FOR
TEMPORARY
RESTRAINING
ORDER

ADR

RS

E-FILING

GENE RUGRODEN )
)
Plaintiff )
)
vs. )
)
STATE BANK of PARK RAPIDS, )
JACK SMYTHE, JON SMYTHE, )
CITY OF PARK RAPIDS, MN, )
NORTHBEACH ASSOCIATION )
Et al., CHUCK HAGEN )
DOES 1 thru 100 )
)
Defendants. )
)

Plaintiff hereby requests a restraining order to prevent further damage and

Loss to Plaintiff.

To Stay Hubbard County Sheriff sale of Plaintiff's real and personal

property in Hubbard County.  The property scheduled for sale amounts to over one

and three-quarter million dollars worth of real and personal property on 24APR08 to

settle an alleged $107,000.00 debt allegedly in favor of State Bank of Park Rapids,

MN.

I believe I would receive nothing from such a sale.

Respectfully submitted.

Dated:    APR08

Gene Rugroden
1157 Tilton Dr.
Sunnyvale, California
Telephone:    408.781.0071
Facsimile:    408.736.2929

1

COPY OF THE LEGAL DESCRIPTION OF THE
HOMESTEAD YOU HAVE DESIGNATED BY TEN
BUSINESS DAYS BEFORE THE DATE THE PROPERTY
IS TO BE SOLD. (#9986-Mar. 8-Apr. 12)

☐ WANTED JUNK BATTERIES AND WHEEL WEIGHTS.
WILL PICK UP. PAY UP TO $10 PER BATTERY
1-800-777-2243 ASK FOR CAL.

☐ "Annie" Performances Bet your bottom dollar you'll be
charmed by Little Orphan Annie's plucky spirit in this beloved
children's musical! Performed by Long Lake Theater's Kids
Academy on April 3-13 (Thurs.-Sat. at 7:30pm & Sun. at
3pm). Adults $14, Children (ages 4-12) $7 and Lap Children
(3 & under) are free. Reservations: Call (218) 732-0099 or
visit www.longlaketheater.net. Tickets also available at
Beagle Books in Park Rapids. Long Lake Theater is located in
Hubbard, MN (about 6 miles S. of Park Rapids)

☐ NOTICE OF MORTGAGE FORECLOSURE SALE THE
RIGHT TO VERIFICATION OF THE DEBT AND
IDENTITY OF THE ORIGINAL CREDITOR WITHIN THE
TIME PROVIDED BY LAW IS NOT AFFECTED BY THIS
ACTION. NOTICE IS HEREBY GIVEN, that default has
occurred in the conditions of the following described
mortgage: DATE OF MORTGAGE: October 5, 2005
ORIGINAL PRINCIPAL AMOUNT OF MORTGAGE:
$94,950.00 MORTGAGOR(S): Jason L. Brose, unmarried
and Amelia Wohjer, unmarried MORTGAGEE: Mortgage
Electronic Registration Systems, Inc. DATE AND PLACE OF
FILING: Filed October 6, 2005, Hubbard County Recorder,
Document No. A000311651 ASSIGNMENTS OF
MORTGAGE: Assigned to: Everhome Mortgage Company;
Dated: November 20, 2007 LEGAL DESCRIPTION OF
PROPERTY: Lots Twelve (12) and Thirteen (13) of Block
Thirteen (13) of Akeley COUNTY IN WHICH PROPERTY
IS LOCATED: Hubbard THE AMOUNT CLAIMED TO BE
DUE ON THE MORTGAGE ON THE DATE OF THE
NOTICE: $98,052.60 THAT all pre-foreclosure requirements
have been complied with; that no action or proceeding has
been instituted at law or otherwise to recover the debt secured
by said mortgage, or any part thereof; PURSUANT, to the
power of sale contained in said mortgage, the above described
property will be sold by the Sheriff of said county as follows:
DATE AND TIME OF SALE: May 6, 2008 10:00am PLACE
OF SALE: Sheriff's Main Office, Lobby of Hubbard County
Sheriff's Office, Court Street, Park Rapids, MN 56470 to pay
the debt secured by said mortgage and taxes, if any, on said
premises and the costs and disbursements, including attorneys
fees allowed by law, subject to redemption within 6 months
from the date of said sale by the mortgagor(s) the personal
representatives or assigns. "THE TIME ALLOWED BY LAW
FOR REDEMPTION BY THE MORTGAGOR, THE
MORTGAGOR'S PERSONAL REPRESENTATIVES OR
ASSIGNS, MAY BE REDUCED TO FIVE WEEKS IF A
JUDICIAL ORDER IS ENTERED UNDER MINNESOTA
STATUTES SECTION 582.032 DETERMINING, AMONG
OTHER THINGS, THAT THE MORTGAGED PREMISES
ARE IMPROVED WITH A RESIDENTIAL DWELLING OF
LESS THAN 5 UNITS, ARE NOT PROPERTY USED FOR
AGRICULTURAL PRODUCTION, AND ARE

http://www.parkrapidsenterprise.com/classifieds/index.cfm

Section Twenty-four (24), Township One Hundred Forty (140), Range Thirty-four (34), Hubbard County, Minnesota, lying between the above-described meander line and the water's edge of Lake Belle Taine and a prolongation to the water's edge of the East and West boundaries respectively of the above-described tract, it being the intention to convey full riparian rights with the above-described tract. AND All that part of Government Lot Two (2); Section Twenty-four (24), Township One Hundred Forty (140), Range Thirty-four (34), Hubbard County, Minnesota, lying North of Old State Highway No. 34 as now designated as County Road No. 80, bounded and described as follows: Commencing at meander corner No. 10 at the northeast corner of said Government Lot Two (2) and running thence northwesterly on the meander line of Lake Belle Taine (deflect left 61 degrees off East section line) a distance of 120 feet; Thence running South on a line parallel with the East line of said Section Twenty-four (24), to a point on the North boundary of Old State Highway No. 34 as now designated as County Road No. 80; Thence running in an easterly direction along the North boundary of said old State Highway No. 34 to the point of intersection with the East line of said Section Twenty-four (24); Thence running North along the section line to the point of beginning. Also including all that part of Government Lot Two (2), Section Twenty-four (24), Township One Hundred Forty (140), Range Thirty-four (34), Hubbard County, Minnesota, lying between the above-described meander line and the water's edge of Lake Belle Taine and a prolongation to the water's edge of the East and West boundaries respectively of the above-described tract, it being the intention to convey full riparian with the above-described tract. This parcel is subject to an easement for the existing building which encroaches upon this property together with a five (5) foot walkway around the building for the purpose of maintenance. This easement is intended to remain only so long as the existing structure exists, after which this easement will expire. AND Lot Four (4) of Block One (1) of Skis Lark, according to the plat thereof on file and of record in the office of the County Recorder in and for the County of Hubbard and the State of Minnesota, according to the plat thereof on file and of record in the office of the County Recorder in and for Hubbard County, Minnesota. Dated: February 22, 2008 Gary A. Mills, SHERIFF OF HUBBARD COUNTY /s/By: Deputy Greg Siera Peloquin & Minge, P.A. Attorneys for Plaintiff 432 Third Avenue SE Perham, MN 56573 Telephone: (218) 346-6900 HOMESTEAD DESIGNATION NOTICE (If applicable) IF PART OF THE PROPERTY TO BE SOLD CONTAINS YOUR HOUSE, YOU MAY DESIGNATE THE AREA OF A HOMESTEAD TO BE SOLD AND REDEEMED SEPARATELY. YOU MAY DESIGNATE THE HOUSE YOU OCCUPY AND ANY AMOUNT OF THE PROPERTY AS A HOMESTEAD. THE DESIGNATED HOMESTEAD PROPERTY MUST CONFORM TO THE LOCAL ZONING ORDINANCES AND BE COMPACT SO THAT IT DOES NOT UNREASONABLY REDUCE THE VALUE OF THE REMAINING PROPERTY. YOU MUST PROVIDE THE CREDITOR CAUSING THIS PROPERTY TO BE SOLD, THE SHERIFF, AND THE COUNTY RECORDER WITH A

04/22/2008  16:55  2187324425    AVENSON INSURANCE    PAGE    23

http://www.parkrapidsenterprise.com/classifieds/index.cl

2003, and June 16, 2003, (those being the dates of docketing of said judgments in Hubbard County) in and to the real estate hereinafter described, or any interest therein which said Defendant has since that day acquired, the description to the property being as follows: to-wit: All that part of Government Lot Number Two (2) in Section Twenty-four (24), Township One Hundred Forty (140), Range Thirty-four (34), Hubbard County, Minnesota, lying North of Old State Highway Number 34 now designated as County Highway No. 80 except a tract of land described as follows: Commencing at Meander Corner No. 10 (3 inch Pipe Judicial) at the Northeast Corner of said Government Lot Two (2) and thence running Northwesterly on the meander line of the South Shore of Lake Belle Taine (deflect left 61 degrees off East section line) a distance of 590 feet; thence running (deflect left 20 degrees 50 seconds) a distance of 175 feet; thence running along said meander line (deflect right 11 degrees 45 seconds) a distance of 150 feet to a point marked with an iron monument; thence running southwesterly (interior angle 110 degrees 20 seconds) a distance of 527.3 feet to a point on the North boundary line of said old Highway Number 34 marked with an iron monument; thence running southeasterly along the North boundary of said old Highway Number 34 to the point of intersection with the East line of said Government Lot Number Two (2); thence running North along the East line of Government Lot Number Two (2) to the point of beginning. The East section line of said Section Twenty-four (24), is considered a true North-South meridian. Also including all that party of Government Lot Two (2), Section Twenty-four (24), Township One Hundred Forty (140), Range Thirty-four (34), Hubbard County, Minnesota, conveyed herein lying between the meander line and the water's edge of Lake Belle Taine and a prolongation to the water's edge of the East and West boundaries respectively of the above described tract, it being the intention to convey full riparian rights with the above described tract. All that part of Government Lot Two (2), Section Twenty-four (24), Township One Hundred Forty (140), Range Thirty-four (34), Hubbard County, Minnesota, lying North of Old State Highway No. 34 now designated as County Road No. 80, bounded and described as follows: Commencing at meander corner No. 10 at the northeast corner of said Section Twenty-four (24) and running thence northwesterly on the meander line of Lake Belle Taine (deflect left 61 degrees off East section line) a distance of 120 feet to the point of beginning of the tract hereby conveyed; Thence continuing on the same tangent along the meander line of Lake Belle Taine for a distance of 120 feet; Thence running South on a line parallel with the East section line of Section Twenty-four (24) to a point on the North boundary of Old State Highway No. 34 now designated as County Road No. 80; Thence running easterly along the North boundary of said Old State Highway No. 34 to a point lying due South of the point of beginning; thence running North to the point of beginning. The East section line of said Section Twenty-four (24) is considered a true North-South meridian. Also including all that part of said Government Lot Two (2),

ark R:  s Enterprise                          http://www.parkrapidsenterprise.com/classifieds/index.cfm

OF POSTPONEMENT OF MORTGAGE FORECLOSURE
SALE NOTICE IS HEREBY GIVEN, that the above
Mortgage Foreclosure Sale is hereby postponed to Tuesday,
April 08, 2008, at 10:00 a.m. at the Sheriff's Department Front
Lobby, City of Park Rapids in said County and State. Dated:
February 27, 2008 Bank of New York as Trustee for the
Certificateholders CWABS, Inc. Asset-Backed Certificates,
Series 2006-4 Assignee of Mortgagee Peterson, Fram &
Bergman, P.A. By: /s/ Steven H. Bruns Attorneys for: Bank of
New York as Trustee for the Certificateholders CWABS, Inc.
Asset-Backed Certificates, Series 2006-4 Assignee of
Mortgagee 55 E. 5th St., Suite 800 St. Paul, MN 55101 (651)
291-8955 16751-071023 THIS IS A COMMUNICATION
FROM A DEBT COLLECTOR (#9981 - Mar. 1-Apr. 5)

☐ NOTICE OF SHERIFF'S EXECUTION SALE (Real
Property) IN DISTRICT COURT NINTH JUDICIAL
DISTRICT Court File No: 29-C9-02-922 29-CO-03-186
STATE OF MINNESOTA COUNTY OF HUBBARD State
Bank of Park Rapids, Plaintiff, vs. Gene Rugroden,
Defendant. Under and by virtue of two Executions issued out
of and under the seal of the District Court of the State of
Minnesota, in and for the Ninth Judicial District and County
of Hubbard, both on November 19, 2007, upon judgments
rendered and docketed in said Court and County in two
actions therein, wherein State Bank of Park Rapids, was
Plaintiff and Gene Rugroden was Defendant, in favor of said
Plaintiff and against said Defendant for the total sum of One
Hundred Twelve Thousand Eight Hundred Ninety-two and
44/100's Dollars ($112,892.44), as appears in the judgment
rolls filed in the office of the Administrator of said District
Court for said County of Hubbard; WHEREAS, the first
judgment Case No. 29-CO-03-186 was docketed in the
District Court of Hubbard County on the 30th day of April,
2006, and the sum of Forty-one Thousand Eleven and
87/100's Dollars ($41,011.87) (including accrued costs of
$320.00 and interest computed to November 19, 2007) is now
actually due thereon, plus additional interest computed up to
and including the date of sale and all of my fees, costs and
disbursements of levy and sale; WHEREAS, the second
Judgment Case No. 29-C9-02-922 was docketed in the District
Court of Hubbard County on the 16th day of June, 2003, and
the sum of Seventy-five Thousand One Hundred Nine and
75/100's ($75,109.75) (including accrued costs of $320.00
and interest computed to November 19, 2007) is now actually
due thereon plus additional interest computed up to and
include the date of sale and all of my fees, costs and
disbursements of levy and sale; WHEREAS, said Executions
have to me as Sheriff of Hubbard County been duly directed
and delivered, PLEASE TAKE NOTICE that I have levied
upon and will sell at public auction to the highest cash bidder,
on the front steps of the Sheriff's Office, 203 Court Avenue,
Park Rapids, County of Hubbard, on the 22nd day of April,
2008, at 10:00 o'clock a.m. of that day, all the right, title and
interest that the above-named defendant had on the April 30,

AJAM8 10:50 AM