Peter M. Rehon (SBN 100123)
Mark V. Isola (SBN 154614)
REHON & ROBERTS
A Professional Corporation
Ten Almaden Blvd., Suite 550
San Jose, CA  95113-2238
Telephone: (408) 494-0900
Facsimile: (408) 494-0909

Attorneys for Defendants
STATE BANK OF PARK RAPIDS,
JACK SMYTHE, and JON SMYTHE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(San Jose Division)

| | |
|---|---|
| GENE RUGRODEN,<br><br>       Plaintiff,<br><br>v.<br><br>STATE BANK OF PARK RAPIDS; JACK SMYTHE; JON SMYTHE; CITY OF PARK RAPIDS, MN; NORTH BEACH ASSOCIATION, ET AL.; CHUCK HAGEN, DOES 1 through 100,<br><br>       Defendants. | Case No.  C08 - 01964<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS STATE BANK OF PARK RAPIDS, JACK SMYTHE, AND JON SMYTHE**<br><br>**Date: September 5, 2008**<br>**Time: 9:00 a.m.**<br>**Courtroom: 3**<br><br>**Honorable Jeremy Fogel** |

## I.   INTRODUCTION

Defendants State Bank of Park Rapids (hereinafter referred to as "State Bank"), Jack Smythe, and Jon Smythe submit this Reply Memorandum in Support of their Motion to Dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

As part of his continuing effort to harass Defendants State Bank, Jack Smythe, and Jon Smythe by hailing them into this California court, which is almost 2,000 miles from their place of business and residences in Minnesota, and forcing them to defend against frivolous and untimely claims, Plaintiff Gene Rugroden ("Plaintiff") has filed his Affidavit, which is full of false

statements. The one thing that Plaintiff's Affidavit makes clear is that he has absolutely no regard for the truth, and he will stop at nothing to try to harass State Bank, Jack Smythe, and Jon Smythe by causing them to incur as many legal expenses as possible to defend against his frivolous and untimely claims. Plaintiff's motive is revenge: to get back at State Bank for legally executing on one of Plaintiff's lake properties in Hubbard County, Minnesota, to collect on one of State Bank's judgments legally entered against Plaintiff in Hubbard County, Minnesota.

The Responsive Affidavits of Jack Smythe, Jon Smythe, and Sue Smythe being filed herewith set forth the truth about their contacts with the forum state of California, as opposed to the false statements set forth in Plaintiff's Affidavit. Even if Plaintiff's false statements in his Affidavit are taken as true, there is still insufficient evidence to justify hailing State Bank, Jack Smythe, and Jon Smythe into court in California.

## II. RESPONSIVE STATEMENT OF FACTS

The following allegations and/or facts were raised by Plaintiff in his Affidavit in support of his opposition to Defendants' Motion to Dismiss, and require the response from Defendants as set forth herein.

Plaintiff states that Sue Smythe visited him in California in 1999, and she discussed with him the terms that Jack Smythe and State Bank may be agreeable to in terms of a purchase by Plaintiff of The Pines Supper Club property (the "Property") from State Bank. Affidavit of Gene Rugroden at ¶6. Sue Smythe states in her responsive affidavit that she never discussed with Plaintiff the terms that Jack Smythe and State Bank may be agreeable to related to a purchase by Plaintiff of the Property from State Bank. Responsive Affidavit of Sue Smythe at ¶4.

Plaintiff states that in April and May of 1999, Jack Smythe called him several times at Plaintiff's office in California to discuss "the form and price of a deal" for Plaintiff to purchase the Property. Affidavit of Gene Rugroden at ¶7. Jack Smythe states in his affidavit that he did not call Plaintiff at his office in California several times in April and May of 1999 to discuss the form and price of a deal for Plaintiff to purchase the Property. Responsive Affidavit of Jack Smythe at ¶3.

MEMO. OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

Plaintiff states that in late December 1999, Jack Smythe called him in California insisting that he sign the Contract for Deed and send it back to State Bank before year end. Plaintiff also states that Jack Smythe "further indicated that the description matched that which was foreclosed on in 1998 and reviewed by an attorney in Park Rapids, Jim Wallace." Affidavit of Gene Rugroden at ¶10. Jack Smythe states in his Responsive Affidavit that he did not call Plaintiff in California in late December 1999, and he did not tell Plaintiff that the legal description in the Contract for Deed matched that which was foreclosed on in 1998. Responsive Affidavit of Jack Smythe at ¶6.

Plaintiff states in his Affidavit: "The defendants *and others* in this case have systematically engaged in a cooperative plan of conversion, targeting me in California, to relieve me of my property and money and terrorizing me to the point of fearing for my safety and freedom in Minnesota." Affidavit of Gene Rugroden at ¶3. Jack Smythe states in his affidavit that he did not do so. Responsive Affidavit of Jack Smythe at ¶2; *see also,* Responsive Affidavit of Sue Smythe at ¶2. Sue Smythe states in her affidavit that Plaintiff came to her home in Hubbard County, Minnesota, at least three times in April 2008, and he did not act in a manner that suggested he was fearing for his safety. Responsive Affidavit of Sue Smythe at ¶2.

Plaintiff states in his affidavit that Jon Smythe, as a City of Park Rapids council member, called him in his office in California and talked with him about what the City may take for the Park Rapids Armory, which the City owned, and that Jon Smythe was instrumental in Plaintiff's purchase of the Armory. Plaintiff states that after he invested over $160,000 in the Armory, the City took it back and sold it without giving him anything. Affidavit of Gene Rugroden at ¶¶11-14. Jon Smythe states in his responsive affidavit that he did not call Plaintiff at his office in California, but Plaintiff called Jon Smythe, as a City Council member, in Minnesota and asked him what the City might take for the Armory. Responsive Affidavit of Jon Smythe at ¶2. Jon Smythe admits working on Plaintiff's purchase of the Armory as a City Council member, but any action by the City had to be voted on by the City Council. None of Jon Smythe's work on Plaintiff's purchase of the Armory had anything to do with State Bank. *Id.* at ¶3. Jon Smythe was not a City Council member when the City took the Armory back from Plaintiff. *Id.* at ¶4.

The City of Park Rapids took the Armory back from Plaintiff, because Plaintiff failed to meet the terms of the contract that he signed when he purchased the Armory from the City of Park Rapids. Supplemental Affidavit of Sue Smythe at ¶5.

The vehicle Jon Smythe sold to Plaintiff in 2001 was Jon Smythe's own personal vehicle; it was not owned by State Bank. *Id.* at ¶5. Plaintiff has not alleged any wrongdoing in regard to Jon Smythe's sale of the vehicle to him.

### III.   ARGUMENT

**A.   Defendants State Bank, Jack Smythe, and Jon Smythe are not subject to "limited personal jurisdiction" by this Court in California**.

Plaintiff concedes, at page 3 of his brief, that the contacts of Defendants State Bank, Jack Smythe, and Jon Smythe with California are insufficient to establish "general jurisdiction" by this Court.

The Ninth Circuit has established the following tripartite test for determining whether due process allows for the exercise of "limited personal jurisdiction" in a given case:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he ***purposefully avails*** himself of the privilege of conduction of activities in the forum, thereby ***invoking the benefits and protections of its laws***.

(2) The claim must be one which ***arises out*** of or results from the ***defendant's forum-related activities***.

(3) Exercise of jurisdiction must be ***reasonable***.

*Peterson v. Kennedy,* 771 F. 2d 1244, 1261 (9th Cir. 1985)(emphasis added), quoting *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F. 2d 1280, 1287 (9th Cir. 1977). Each of the three tests must be satisfied to permit a district court to exercise "limited personal jurisdiction" over a nonresident defendant. 771 F. 2d at 1261. The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. *Schwarzenegger v. Fred Martin Motor Company,* 374 F. 3d 797, 802 (9th Cir. 2004). If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable. *Id.*

**1.    Defendants State Bank, Jack Smythe, and Jon Smythe did not purposefully avail themselves of the privilege of doing business in California, thus invoking the benefits and protections of California law.**

Plaintiff states in his affidavit that Jack Smythe called him while Plaintiff was in California to discuss the form and price of a deal for him to buy the Property and to insist that he sign the Contract for Deed, which was being sent to him, in December 1999. Jack Smythe denies that he called Plaintiff in California, as alleged by Plaintiff. Responsive Affidavit of Jack Smythe at ¶3, ¶6. Plaintiff also relies on the fact that Jack Smythe mailed the contract for deed, containing the legal description of the Property that Plaintiff contends was wrong, from Minnesota to Plaintiff in California to sign and return to Minnesota.

Even if Plaintiff's statements are taken as true, Plaintiff has failed to prove that these defendants purposefully availed themselves of the privilege of doing business in California, thus invoking the benefits and protections of California law. The Ninth Circuit has held that frequent communication by use of the mails, telephone, or other means of communication between a foreign defendant and a California plaintiff in the California plaintiff's California office does not qualify as purposeful activity invoking the benefits and protection of the laws of the forum state of California. *Thos. P. Gonzales Corp. v. Consejo Nacional, Etc.,* 614 F. 2d 1247, 1249, 1254 (9th Cir. 1980); *Peterson v. Kennedy,* 771 F. 2d 1244, 1262 (9th Cir. 1985). Moreover, for a plaintiff to show that a defendant purposefully availed himself of the privilege of doing business in the forum state, the plaintiff must present evidence of the *defendant's* actions in the forum state, such as the *defendant* executing or performing a contract in the forum state. *Schwarzenegger v. Fred Martin Motor Company,* 374 F. 3d 797, 802 (9th Cir. 2004). Defendants State Bank, Jack Smythe, and Jon Smythe did *nothing* in California to avail themselves of the privilege of doing business in California, thereby invoking the laws of California. In fact, when Plaintiff had insufficient funds in his Minnesota bank account from which his payments required by the contract for deed could be taken by State Bank, and he otherwise failed to make the payments required to be made in Minnesota, State Bank cancelled the contract for deed, invoking the laws of *Minnesota.* Thus, Plaintiff has failed to prove that Defendants State Bank, Jack

Smythe, and Jon Smythe purposefully availed themselves of the privilege of doing business in California, thus invoking the benefits and protections of California law.

### 2. Plaintiff's claims do not arise out of or result from Defendants' activities in California.

The second prong of the *Data Disc* test is that "the claim must be one which *arises out of or results from* the *defendant's forum-related activities*." *Data Disc,* 557 F. 2d at 1287.

Plaintiff states, at paragraph 6 of his Affidavit, that Sue Smythe visited him in California during the first and second quarters of 1999, during which time she discussed with him the terms that Jack Smythe and State Bank may be agreeable to in terms of the purchase of the Property from State Bank. Sue Smythe denies that statement, stating in her Responsive Affidavit:

> In response to Plaintiff's statement in paragraph 6 of his affidavit, I never discussed with Plaintiff the terms that Jack Smythe and State Bank of Park Rapids may be agreeable to related to a purchase by Plaintiff of the Property from State Bank of Park Rapids. I purposefully disassociated myself from the business dealings associated with that property as they related to Plaintiff.

Responsive Affidavit of Sue Smythe at ¶4.

Even if Plaintiff's statement is taken as true, Plaintiff's claims do not arise out of any discussions with Sue Smythe in California or out of any conduct by the other defendants in California. His claims arise out of the change in the legal description in the contract for deed, which was done by State Bank's attorney in Minnesota, and State Bank's cancellation of the contract for deed regarding the Property in Minnesota, and execution on his Minnesota lake property, pursuant to Minnesota law, to collect on judgments lawfully obtained against him in Minnesota.

Plaintiff has failed to meet his burden of satisfying the first two prongs of the specific jurisdiction test, and thus, personal jurisdiction cannot be established in this California Court.

### 3. Exercise of jurisdiction over Defendants State Bank, Jack Smythe, and Jon Smythe is not reasonable.

The third prong of the Ninth Circuit's specific jurisdiction test is that the exercise of jurisdiction must be reasonable. *Peterson,* 771 F. 2d at 1261; *Data Disc,* 557 F. 2d at 1287. Only if this Court determines that Plaintiff has met his burden of satisfying both of the first two prongs

of the specific jurisdiction test, which he has not done, does the burden shift to the defendants to present a compelling case that the exercise of jurisdiction by this California Court would not be reasonable. *Schwarzenegger,* 374 F. 3d at 802.

In the event this Court does reach the third prong, the Ninth Circuit has identified seven factors that are relevant to the reasonableness inquiry. Those factors are:

(1) the ***extent*** of the defendant's purposeful injection into the forum state's affairs;

(2) the burden on the defendant of defending in the forum;

(3) the extent of conflict with the sovereignty of the defendant's state;

(4) the ***forum state's interest*** in adjudicating the dispute;

(5) the most efficient judicial resolution of the controversy;

(6) the importance of the forum to the plaintiff's interest in convenient and effective relief;

(7) the existence of an ***alternative forum***.

*Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1114 (9th Cir. 2002) (emphasis added).

In regard to this third prong, Plaintiff, at page 4 of his brief, argues:

> The terror and fear for his safety and freedom that Plaintiff felt, preventing him to operate in Minnesota presents a "compelling case that the presence of some other considerations that would make jurisdiction unreasonable."

Plaintiff's Memorandum, 4:4 – 10 (quoting *Ballard v. Savage* 65 F.3d 1500 (9th Cir. 1995).

Plaintiff explains the reasons for his alleged "terror and fear for his safety and freedom" in his Affidavit as follows:

> 3. The defendants <u>and others</u> in this case have systematically engaged in a cooperative plan of conversion, targeting me in California, to relieve me of property and money and terrorizing me to the point of fearing for my safety and freedom in Minnesota.
>
> 17. A friend of mine in the Park Rapids area told me that a Sheriff's deputy was looking for me to arrest me as soon as I came into town.
>
> 18. I was pulled over while driving near midnight to the Park Rapids airport by a police officer, self admittedly from another county, harassed and had it suggested that I was not welcome in the Park Rapids Area in 2004.

Affidavit of Gene Rugroden at ¶3, ¶17, ¶18.

7

These defendants doubt the truth of Plaintiff's statement that he is afraid to come to Minnesota, because he has been terrorized "by the defendants *and others*" in Minnesota to the point of fearing for his safety and freedom. In fact, Plaintiff was in Minnesota in April 2008. Responsive Affidavit of Sue Smythe at ¶2. Plaintiff has failed to present any evidence that Defendants State Bank, Jack Smythe, or Jon Smythe ever terrorized Plaintiff, so that he would be afraid for his safety if he came to Minnesota. These defendants certainly have never threatened Plaintiff's safety. Affidavit of Jack Smythe at ¶2. If Plaintiff truly is "fearing for his safety and freedom" in Minnesota, it is only because of his own unlawful conduct in Minnesota. There are no outstanding warrants for the arrest of Plaintiff at this time in Hubbard County, Minnesota, and Plaintiff has presented no evidence of any such outstanding warrants for his arrest in Hubbard County.

Plaintiff has presented no evidence, other than his own self-serving lies, or authority for his position that he has no alternative forum in Minnesota because he is afraid for his safety and freedom in Minnesota. A plaintiff's alleged fear that his own unlawful conduct may have put him in jeopardy of being arrested in a non-forum state has never been a sufficient reason to hail out-of-state defendants into court in the forum state.

In regard to the other factors that are relevant to consider in determining whether it is reasonable to hail these Minnesota defendants into court in California, the second factor is still very compelling, that is, it is unreasonable for these Minnesota defendants to defend these claims in California. **ALL** of the trial witnesses and parties, except Plaintiff, live in Minnesota, almost 2,000 miles from this California Court. In addition, the attorneys who are on retainer for State Bank, who do most of State Bank's litigation and who are most familiar with the facts of this case, Lori Beck, Steve Peloquin, and John Minge, do business in and reside in Minnesota. Defendants State Bank, Jack Smythe, and Jon Smythe will have to travel to and stay in California to prepare for and attend the trial. In addition, they will have to pay very substantial expenses for all the witnesses, who reside in Minnesota, to travel to and stay in California to testify at the trial, if the trial is held in California. Some of the trial witnesses who reside in Minnesota may not voluntarily appear at the trial in California, and they are outside the subpoena power of this

1 California Court.  Trial witnesses who are known at this time who these defendants need to testify
2 for Defendants State Bank, Jack Smythe, and Jon Smythe, who reside in Minnesota, include, but
3 are not limited to: Jack Smythe, Jon Smythe, Sue Smythe, Jerry Janz, Gregory Larson, Jeremy M.
4 Monroe, Chuck Hagen, David Lyng, George Hill, James Wallace, and Neal Narveson.  The
5 expense and disruption to these witnesses' lives to attend the trial of this case in California would
6 be substantial, unreasonably burdensome, and unnecessary.  It is clearly **unreasonable** to have
7 this case litigated in California, almost 2,000 miles from where **all** the witnesses and parties,
8 except Plaintiff, reside, just so Plaintiff can cause State Bank to incur as much legal expense as
9 possible to revenge State Bank's legal execution on Plaintiff's property in Minnesota.  This factor
10 clearly weighs heavily in favor of dismissal by this Court.

11 All of the other factors relevant to the reasonableness inquiry overwhelmingly favor
12 dismissal of Plaintiff's claims against Defendants State Bank of Park Rapids, Jack Smythe, and
13 Jon Smythe, as discussed in Defendants' initial Memorandum in Support of their Motion to
14 Dismiss.

### IV.   **CONCLUSION**

16 Based on the foregoing and all other documents on file with the Court, Defendants State
17 Bank, Jack Smythe, and Jon Smythe respectfully request this Court to grant their Motion to
18 Dismiss for Lack of Personal Jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil
19 Procedure.

20 DATED: August 21, 2008            REHON & ROBERTS
                                    A Professional Corporation

22                                  By:   Mark V. Isola  /s/
23                                        Peter M. Rehon
                                          Mark V. Isola
24                                        Attorneys for Defendants
                                          STATE BANK OF PARK RAPIDS,
                                          JACK SMYTHE, and JON SMYTHE